Polley *v.* Atlantic Refining Co., Appellant.

Argued October 13, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Kim Darragh,* with him *Meyer, Darragh, Buckler, Bebeneck & Eck,* for appellants.

*Arthur G. Stein,* with him *Stein & Winters,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 23, 1965:
On August 5, 1961, Kenneth B. Polley was driving his automobile, with his wife and children as passengers, on Route 22 in Allegheny County when it came

into violent collision with a tractor-trailer owned by the Atlantic Refining Company and being operated by Robert G. Cochran. As a result of the accident, Polley's wife and a daughter were killed and two of his other children were seriously injured. The tractor-trailer was damaged to the extent of a repair bill amounting to $1131.02.

The Atlantic Refining Company (hereinafter referred to as Atlantic) claimed that the collision was due to the negligence of Kenneth Polley and demanded payment of him for the repair bill. Polley's insurance carrier, the Ohio Casualty Insurance Company, agreed to pay Atlantic $1131.02 in full settlement of all claims it and its driver Robert G. Cochran might have against Kenneth Polley. After some negotiations, including exchange of letters, an agreement was reached between the parties and, on November 13, 1961, the Ohio Casualty paid to Atlantic $1131.02. In consideration for this payment, Atlantic turned over to Ohio Casualty, in behalf of Kenneth Polley, a release which reads as follows:

"RELEASE OF ALL CLAIMS

"Know Ye, that I/We Atlantic Refining Company and Robert Glen Cochran For and in consideration of the sum of One thousand one hundred and thirty-one and 02/100 Dollars ($1131.02—) to me/us in hand paid by Kenneth B. Polley the receipt of which is hereby acknowledged, I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge the said Kenneth B. Polley, his/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators, and any and all other persons, associations and/or corporation, whether herein named or referred to or not, of and from any and every claim, demand, right, or cause of action of whatever kind or nature, either in

law or in equity, especially the liability arising from an accident which occurred on or about the fifth day of August, 1961 at or near Carnegie, Penna. for which I/We have claimed the said Kenneth B. Polley to be legally liable, but this release shall not be construed as an admission of such liability.

"IN WITNESS WHEREOF, I/We have hereunto set my/our hand(s) and seal(s) this 7th day of November, 1961.

    READ CAREFULLY BEFORE SIGNING
    THE ATLANTIC REFINING COMPANY,  (Seal)
    By H. Borton Off,             (Seal)
    Claim Agent
    Robert G. Cochran
"Witness   E. G. Welsh,
  Witness   Homer J. Barnes.
STATE OF PENNSYLVANIA   )
COUNTY OF PHILADELPHIA  )   ss :"

It would be difficult to conceive of a durable umbrella with a greater diameter and circumference to protect Kenneth Polley from financial claims rising from the event of August 5, 1961, and falling down upon all parties involved in its tragic periphery, than this release. Nevertheless, when suits[1] were brought by the Polley family against Atlantic and Robert Cochran, Atlantic joined Kenneth Polley as an additional defendant, averring he was solely responsible for the accident or, in the alternative, jointly responsible with Atlantic. Polley pleaded the release of November 7, 1961, and moved for judgment on the pleadings, which the Court granted, dismissing Atlantic's complaint.

---

[1] The Wayne County Bank & Trust Company was plaintiff as administrator of the estates of Doris Polley and Sandra Polley, and guardian of Carla Polley and Linda Polley, minors. Kenneth Polley himself was declared incompetent after the accident and suit was entered through a guardian but he was later declared competent and the guardian was removed as a party.

Atlantic appealed, two cases being involved. It argues that the release in question was not intended by the parties to include a release of any future rights in the original defendant to join Polley as an additional defendant or to preclude it from claiming contribution. This contention, while forcibly advanced, shatters against the stone wall of the release which in the most comprehensive language possible states that Atlantic and Cochran "remise, release, acquit, and forever discharge" Polley from "any and every claim, demand, right or cause of action of whatever kind or nature . . . arising from an accident which occurred on or about the fifth day of August, 1961, at or near Carnegie, Penna, for which I/We have claimed the said Kenneth B. Polley to be legally liable." The release itself is entitled "RELEASE OF ALL CLAIMS". Above the signatures of Atlantic and Cochran appears the admonition: "Read Carefully Before Signing."

Atlantic cannot assert that its representative did not know what he was signing, or that he was not familiar with the circumstances of the case. Nor can Atlantic assert, with any degree of intellectual confidence, that there was no possibility that a trespass suit would be brought against it because of the disastrous accident of August 5, 1961. Atlantic's truck had been damaged but the Polley family had lost two lives and three others of the family had sustained serious injuries. It was thus on notice that the Polley family, including Kenneth Polley himself, could sue and, in all probability, would sue for mortal losses they had suffered and physical hurts they had sustained.

It is possible that Atlantic, through its agents, felt secure that it could successfully resist any possible lawsuit brought against it and that, therefore, it was content to receive $1131.02 from Polley, but in any event, it could not have regarded the payment as a gratuity. Polley paid this money to be relieved of all

claims that Atlantic might have against him. What was the specific consideration for the $1131.02? The promise by Atlantic that from now on it had no claim of *any kind or nature* against Polley.

When an original defendant brings an additional defendant into a lawsuit, his action is not aimed at assisting the plaintiff, but at benefitting himself. His objective is to shift the blame from himself to the additional defendant, or, if they are both liable, to compel contribution from the additional defendant. And this is exactly what Atlantic gave up, namely, the right to make Polley stand beside it in any possible battle with the Polleys. That is why Kenneth Polley paid $1131.02. He paid it, in order, so far as Atlantic was concerned, not to have any further liability of any kind or nature arising out of the happening of August 5, 1961.

The defendant brings into argumentative focus three letters which exchanged between Atlantic and Polley's insurance carrier, contending that the $1131.02 represented only the cost of the truck repair bill and therefore, could constitute no release from personal injury claims. These three letters antedated the release and therefore must be deemed to have been merged into the release. Thus, they cannot be used to vary the terms of the written release. *Moyer v. Independent Oil Co., Inc.,* 401 Pa. 335. In addition, the letters do not foreclose the conclusion that in consideration of payment of the truck damages, Polley was being released completely in all phases of liability arising from the accident, as specifically and expressly stated in the release. In fact, the letter from Polley's insurance carrier insisted that the release be signed also by Cochran, who could have had some claim for personal injuries,—and he did sign. Thus, contrary to the defendant's contention, more than property damage was considered in the pre-release stages.

The lower Court here cited, as authority for its action, the case of *Killian v. Catanese,* 375 Pa. 593. The appellant argues that the *Killian* case is not applicable. But it is. Indeed, the language in the release involved in the *Killian* case is not dissimilar to the one in the release here under appellate review. The release there stated that for $250 consideration, the defendants " 'do hereby remise, release and forever discharge George Wasilky, his heirs, executors and administrators, of and from all, and all manner of, actions and causes of actions, suits, debts, dues, accounts bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, especially the liability arising out of the accident on or about April 5, 1952, at or about 9th and Passyunk Avenues in the City and County of Philadelphia.' "

The *Killian* decision was not limited to holding that the release barred the defendants merely from making claim for contribution from Wasilky. There, as here, the original defendants claimed that Wasilky's negligence caused the plaintiff's injuries. Wasilky relied on the release given him by the original defendants. The lower court, in an opinion, which we affirmed per curiam, stated that the release barred the defendants "from bringing in George Wasilky as an additional defendant when plaintiff commenced her action." It further said that "no attempt was made to limit the scope of the release to claims and demands of the original defendant." Thus, the *Killian* case holds that, because of the language there employed in the release, the original defendants were wholly barred from joining Wasilky as an additional defendant, it not being important whether the joinder was based on the theory of proving sole liability over to the plaintiff or to protect the right of contribution.

Of course, this does not mean that at the trial of the instant case, Atlantic may not introduce evidence

to exculpate itself from liability by showing that the sole cause of the accident was Kenneth Polley and not Robert G. Cochran, its driver. Atlantic may still evidentially fasten the blame on Polley, not as a party in the lawsuit but to exonerate itself from the charge of negligence.

Atlantic may not argue that, by denying it the right to make Kenneth Polley an additional defendant, the plaintiffs suffer a loss. No chain of reasoning could connect the defendant's objectives with an altruistic interest in the plaintiff's case. It was within Atlantic's determination to charge Kenneth Polley with sole or joint responsibility for the accident, but it contracted away that determination by accepting a money consideration from Kenneth Polley. It is too late now for Atlantic to renounce the contract by maintaining that it had an intention other than what it unambiguously expressed in the release which it and Cochrane signed.

The appellant argues that *Davis v. Miller*, 385 Pa. 348, is authority here, not *Killian*. In the *Davis* case, we had before us a release which we stated was "couched in practically the same language as that in the Killian case" and we declared that by such release "he [the original defendant] clearly surrendered any claim he might have had to recover from the additional defendant by way of contribution or otherwise." However, in *Davis*, there was an additional fact present which put *Killian* in abeyance, namely, not only was there a release from the defendant to the additional defendant, but there was in addition a release from the plaintiff to the additional defendant. We expressly stated that this additional fact made *Killian* inapplicable because the additional defendant had given the plaintiff a release which stated " 'That any damages, recoverable by the Undersigned, against or from all the other joint tortfeasors, shall be reduced to the extent of the pro rata share of said damages which the

parties released hereby, except for this release, would otherwise have to pay.' " We held that "it was therefore clear that an important factor in the determination of the amount of damages that Miller [the original defendant] may be required to pay to plaintiffs is whether or not Mary Richardson [the additional defendant] would also have been liable to them had they not released her,—in other words, whether she was a joint tortfeasor with Miller." Therefore we declared that the defendant was entitled to have Mary Richardson a party of record because under the terms of the release given by the plaintiffs to Mary Richardson, the plaintiffs could only recover from the original defendant his pro rata share, or one-half, of the amount to which plaintiffs would otherwise have been entitled. Thus, our decision in *Davis v. Miller* in no way dulled the incisive effect of *Killian v. Catanese*. In fact, it affirmed that by such a release the original defendant "clearly surrendered any claim he might have had to recover from the additional defendant by way of contribution or otherwise."

The defendant argues that somehow the release is not literally enforcible because it spoke in "broad stereotyped language." But the routineness of the printed form cannot lessen the legal significance of what is therein stated. It carried no handwritten contradictory terms nor was it so long and involved that the novitiate might be lost in labyrinthian passages. Neither were the controlling phrases hidden behind ambiguous verbal bushes, deceiving to the eye.

Atlantic further asserts that it was deceived in that it was not informed that lawsuits were being contemplated against it. As we have already indicated, this was an eventuality which it could have anticipated. Even if future litigation seemed unlikely, it was a possibility which it could have guarded against by an appropriately stated condition in the agreement. Nor

can one dismiss the possibility that if Atlantic had insisted on writing in such a condition, Polley's insurance carrier might have refused to pay for the property damage involved.

We also dismiss the contention that there was no consideration for Cochran's signing of the release because the $1131.02 was paid to Atlantic and not to him directly. It was this very payment to Cochran's employer which constituted consideration for Cochran's signature because this insulated him from claims against him for the property damage. In addition, the release contained a seal against Cochran's signature. That the instrument was intended as one under seal is evidenced by the wording: "I/We have hereunto set my/our hand(s) and seal(s) . . ."

Judgment affirmed.

Mr. Justice EAGEN and Mr. Justice O'BRIEN concur in the result.

_____

DISSENTING OPINION BY MR. JUSTICE COHEN:

Pa. R. C. P. 2252 provides: "(a) In any action the defendant or any additional defendant may file as of course, a praecipe for a writ, or a complaint, to join as an additional defendant any person not a party to the action *who may be alone liable* or liable over to him *on the cause of action declared upon* or jointly or severally liable thereon with him." (Emphasis supplied). Insofar as the joinder sought by the original defendants is based upon the sole liability of the additional defendant to the plaintiff I fail to see how it violates the release given by the original defendant to the additional defendant of any claims the former may have against the latter. Such a joinder does not constitute a demand or claim by the original defendant against the additional defendant. It merely asserts that the additional defendant is solely liable to the plaintiff on the latter's cause of action.

In *Davis v. Miller*, 385 Pa. 348, 123 A. 2d 422 (1956), we held that where both the plaintiff and the defendant had released the additional defendant "from all actions, causes of action, claims, demands, etc." the joinder of the additional defendant was permissible, because if defendant could prove that the additional defendant was, in fact, a joint tortfeasor with him the damages recoverable by plaintiff against defendant would be reduced, pursuant to the Uniform Contribution Among Joint Tortfeasors Act. See *Davis,* supra, at p. 352. We said that "although [the original defendant] cannot recover contribution from the additional defendant, he does have an extremely valuable right in retaining her in the case, because, if the jury should find her to be a joint tortfeasor, his liability to plaintiffs would be cut in half. Her continuance in the case is therefore necessary, even though no recovery can be had against her either by plaintiffs or by defendant, in order to determine the amount of damages that defendant may be obliged to pay plaintiffs. . . ." Similarly, in this case defendant has a valuable right in retaining the additional defendant in the case on the basis of the latter's *sole liability.* If defendant can prove such sole liability no judgment could be entered against him. And he would not thereby be seeking to recover or claim anything from the additional defendant in violation of his release.

*Killian v. Catanese,* 375 Pa. 593, 101 A. 2d 379 (1954), is not in conflict with my opinion in this case because, as we explained in *Davis,* supra at p. 350, all that *Killian* held was that "where the defendant had given a general release of all claims against the additional defendant . . . he could not assert any *right of contribution against him.* . . ." (Emphasis supplied).

I do not mean to suggest that the original defendant could not have released his right to join the additional defendant on the basis of the latter's sole lia-

bility. But I do not perceive the slightest intent to do so in the release before us. Moreover, I would require a rather clear expression of such an intent, because, in the ordinary case, the releasing party is being paid only for injuries that he might have sustained and not for his right to assert that the released party is solely responsible for the accident.

Accordingly, I would permit the joinder of the additional defendant for the purpose of proving his sole liability. Therefore, I dissent.

Mr. Justice JONES joins in this dissenting opinion.