360 F.2d 275
 Milton MAZER, Administrator of the Estate of Israel Abrams,
Deceased, Appellant in No. 15448,
v.
Hattie LIPSHUTZ, Executrix of the Estate of Benjamin
Lipshutz, deceased, Appellant in No. 15447, v.
Albert KOHN, Third-party Defendant,
Appellant in No.15449.
 Nos. 15447-15449.
 United States Court of Appeals Third Circuit.
 Augued Feb. 11, 1966.
Decided April 1, 1966, Rehearing Denied in Nos. 14458, 14459
May 10, 1966.
 
 John B. Martin, Philadelphia, Pa., for defendant Lipschutz (Joseph B. Erwin, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for appellant Lipshutz.
 Harvey B. Levin, Philadelphia, Pa. (Bobert M. Bernstein, Bernstein, Bernstein, Harrison & Kessler, Philadelphia, Pa., Lazarus & Levin, Philadelphia, Pa., on the brief), for plaintiff, Appellee in No. 15447, Appellant in No. 15448.
 Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 In this medical malpractice action the wrong type of blood was administered to plaintiff's decedent during the course of an operation upon him. In addition, one of two sponges left in the patient after the completion of the operation was never removed. At the first trial there were judgments in favor of the surgeon in charge, Dr. Lipshutz and the anesthesiologist, Dr. Chodoff. On appeal we reversed the judgment in favor of Dr. Lipshutz and ordered a new trial. We affirmed the judgment in favor of Dr. Chodoff. Mazer v. Lipshutz, 327 F.2d 42 (3 Cir. 1963), rehearing den. 1964. We held pp. 45, 46, 'There was ample evidence that the administration of the wrong type of blood was a substantial factor in causing his death and also that it was the sole cause of death. There was also proof that the unremoved sponge was a contributing cause.' We restricted the new trial to 'Dr. Lipshutz's vicarious liability in relation to Kohn as delineated above.' (p. 52). Kohn was the 'head technician in charge of the hospital's blood bank,' (p. 44). He was a third-party defendant.
 
 
 2
 At the second trial the jury found Dr. Lipshutz was vicariously liable for the negligence of Kohn and rendered a verdict in favor of the plaintiff and against the Estate of Dr. Lipshutz for $89,318 and for the same amount in favor of the Estate of Dr. Lipshutz and against Kohn. As in the first trial, a release and covenant not to sue by plaintiff releasing the hospital and its employees for a consideration of $60,000 had been put into evidence outside the hearing of the jury. On defense motions, the trial judge, taking into consideration the $60,000 paid by the hospital, reduced both judgments to $29,318. Plaintiff has appealed from the reduction of the amount of his judgment. The Lipshutz estate and Kohn have appealed from the order refusing to grant them judgments n.o.v.
 
 
 3
 The defense argument against plaintiff's judgment centers around the above mentioned release. We note that this affirmative defense was never pleaded on behalf of Lipshutz. Though this is a clear violation of Federal Rule of Civil Procedure 8(c) ue do not find even a mention of it in the Lipshutz briefs. There was no objection to the admission of the release into evidence because of non compliance with Rule 8(c). The release was admitted into evidence. It was also in evidence at the first trial. Under the circumstances, the point on appeal that the failure to plead the release affirmatively forecloses the defense relying on it has not validity.
 
 
 4
 This brings us to the substantial question on the merits, namely, whether the release plaintiff gave the hospital merely reserved his rights against Dr. Lipshutz for any individual negligence on his part and so excluded vicarious liability of Dr. Lipshutz. The document in question is a Pennsylvania joint tort feasor release under the Contribution Among Tort Feasors Act of that Commonwealth (12 P.S. 2082-2089). It releases the hospital, its successors and assigns from all claims arising out of the injuries sustained by the plaintiff's decedent in the accident involved. Then follows in pertinent part the controverted paragraph:
 
 
 5
 'We reserve the right to make claims against any and every person, association or corporation other than Albert Einstein Medical Center, its agents and employees, expressly excluding from this release and reserving rights particularly to claims against Dr. Benjamin Lipschutz, Dr. Peter Chodoff and Dr. David Meranze and any other physician attending the decedent, on account of the accident, injuries and damages sustained by us at the time and place above mentioned. We reserve also the right to claim that such other person, association or corporation is solely liable to us. But for the consideration paid us herein, we further agree that execution of this release shall operate as a satisfaction of our claims against any person, association or corporation other than Albert Einstein Medical Center to the extent of the pro rata share of common liability of Albert Einstein Medical Center.'
 
 
 6
 The exact same issue was raised by the Lipshutz defense in the first appeal. In our opinion, after stating the facts, we held, Mazer v. Lipshutz, supra, p. 50:
 
 
 7
 'In view of the foregoing it follows that the jury under proper instructions would have been entitled to find Dr. Lipschutz, as the captain of the ship, vicariously liable for the administration of incompatible blood to Professor Abrams.'
 
 
 8
 Later on in the opinion, pp. 54-55, we took up the defense contention that the release barred recovery by the plaintiff against Dr. Lipshutz for vicarious liability and said:
 
 
 9
 'Dr. Lipschutz's executrix asserts that a release executed by the plaintiff in favor of the hospital, its agents, and employees, but expressly reserving rights against Dr. Lipschutz, bars the plaintiff from recovering a judgment against the doctor. Appellee's argument is pitched on the ground that the situation presented is not one of joint tortfeasors but one of primary and secondary liability. Therefore, she asserts, if the one primarily liable be discharged, the release operates to discharge anyone secondarily responsible, citing the Restatement, security, Section 122. But the executrix has mistaken the positions of the hospital and of Dr. Lipschutz. They were joint tort-feasors, both vicariously liable. In any event, Section 122 of the Restatement provides that the surety is not discharged if as here, 'the creditor in the release reserves his right against the surety.' The law of Pennsylvania on the subject of joint tortfeasors is clearly applicable to this issue and decides it in favor of the plaintiff. See 12 P.S. Sections 2082-2089.'
 
 
 10
 We find no justification for the defense position that they true meaning of the release is that it only excludes what is designated as 'individual negligence' of Dr. Lipshutz. The latter has been found to be a principal in the operating room, the captain of the operating ship. As such he then, just as much as the hospital, was a primary tort-feasor. Kohn was an employee of the hospital. Kohn, during the operation, was also a subordinate of Dr. Lipshutz who was in charge of the operation. The release to the hospital, its agents and employees on its face did not release Kohn as a vitally important aid of the surgeon in the latter's overall performance of the operation. The hospital was not a party to the Lipshutz suit. There is no judicial finding anywhere in the litigation that Kohn during the operation was acting as an agent of the hospital. The exclusion from the release of plaintiff's rights against Dr. Lipshutz contains no restriction whatsoever. It protects plaintiff's 'claims against Dr. Benjamin Lipshutz * * * on account of the accident, injuries and damages sustained by us at the time and place above mentioned.' All liability of Dr. Lipshutz is clearly included in that unambiguous language. To say that it wiped out the doctor's responsibility for the conduct and acts of his technical assistants merely because they were also employees of the hospital is to misread the release itself and all of the pertinent facts. Pennsylvania law which governs upholds the sound doctrine that a servant may have two masters at one time. McConnell v. Williams, 361 Pa. 355, 361, 65 A.2d 243 (1949) dealt with a surgical operation with collateral negligence by a hospital intern who was assisting the surgeon in charge at the latter's request. The court held that the intern '* * * thereby became-- or at least so a jury might find-- his temporary servant for the purpose for which he was engaged'. To the same effect Restatement of Agency 226, Siidekum v. Animal Rescue League, 353 Pa. 408, 45 A.2d 59 (1946). Beyond doubt the release here did not release the principal Lipshutz from any of his responsibility arising out of the operative procedure. The hospital employee Kohn was functioning as the agent of the operating surgeon during the critical period. The negligence of which he was found guilty at that time was properly attributed to his superior, Dr. Lipshutz.
 
 
 11
 We have examined appellant's other specific points on this question. They are without merit and need no discussion.
 
 
 12
 The remaining problem before us concerns the reduction by the trial judge of plaintiff's verdict against the defendant Lipshutz from $89,318 to $29,318. The judge, on application of the fedense, subtracted the amount paid by the hospital for its release from plaintiff's verdict against Lipshutz. Whether this was correct depends entirely upon Pennsylvania law. $The hospital was never made a defendant in the Lipshutz suit. Actually, apparently because the six months time limit for such a motion had expired, a motion to that end was denied. The Lipshutz action and that against Dr. Chodoff were consolidated for trial purposes only. Dr. Chodoff had a verdict in his favor in his case at the first trial. The second trial was as to the claim against Lipshutz alone with, as we have seen, a verdict against the representative of his estate.
 
 
 13
 On behalf of Lipshutz it is argued that the Uniform Contribution Among Tort-feasors Act of July 14, 1951, P.L. 1130 (12 P.S. 2082), makes the deduction mandatory of the money paid by the hospital for the release to it. Reliance is placed on Sections 1 and 4 of the Act which read:
 
 Section 1:
 
 14
 'For the purposes of this act, the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.'
 
 Section 4:
 
 15
 'A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.'
 
 
 16
 The obvious difficulty with the Lipshutz theory is that admittedly there has been no judicial determination as to the alleged negligence of the hospital. Pennsylvania case law is specific in upholding this sine qua non requirement. In Cavis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956) which is the landmark Pennsylvania decision on the subject, there was a collision between an automobile operated by Mary Richardson and one driven by Amos Miller. Three passengers in the Richardson car sued Miller. The latter sued the Richardson driver and made her an additional defendant. It developed that Mary Richardson had a release from Miller and releases from her passengers. She moved for judgment on the pleadings. The Court sustained this and discharged her from the case. Miller appealed. As the Supreme Court stated p. 349, 123 A.2d p. 423:
 
 
 17
 'It is appellant's contention that notwithstanding the releases held by the additional defendant she should be retained in the case until a jury can determine whether or not she was a joint tortfeasor.'
 
 
 18
 The Court functioning specifically under the above quoted Uniform Contribution Among Tortfeasors Act quoted inter alia the provision relied on here, saying pp. 351-352, 123 A.2d p. 424:
 
 
 19
 'All the releases from the plaintiffs to the additional defendant were given in pursuance of that Act, and they each provided 'That any damages, recoverable by the Undersigned, against or from all the other joint tortfeasors, shall be reduced to the extent of the pro rata share of said damages which the parties released hereby, except for this release, would otherwise have to pay.' It is therefore clear that an important factor in the determination of the amount of damages that Miller may be required to pay to plaintiffs is whether or not Mary Richardson would also have been liable to them had they not released her,-- in other words, whether she was a joint tortfeasor with Miller. If such she was, then, under the Act and the terms of the releases which plaintiffs gave her, they can recover from Miller only his pro rata share, in this case half, of the amount to which they otherwise would have been entitled; if, on the other hand, she was not a joint tortfeasor, the releases given her by plaintiffs would not inure to Miller's benefit. Koller v. Pennsylvania Railroad Company, 351 Pa. 60, 40 A.2d 89. Therefore, although Miller cannot recover contribution from the additional defendant, he does have an extremely valuable right in retaining her in the case, because, if the jury should find her to be a joint tortfeasor, his liability to plaintiffs would be cut in half. Her continuance in the case is therefore necessary, even though no recovery can be had against her either by plaintiffs or by defendant, in order to determine the amount of damages that defendant may be obliged to pay plaintiffs in the light of the situation created by their releases of the additional defendant's liability.'
 
 
 20
 To the same effect Long v. Thomasberger, 14 Pa.Dist. & Co.R.2d 30 (1958); Dice v. Marsolino, 14 Pa.Dist. & Co.R.2d 457 (1958). See also Polley v. Atlantic Refining Co., 417 Pa. 549, 556-557, 207 A.2d 900 (1965).
 
 
 21
 The defendant makes no real attempt to refute the solid law of the Davis opinion and the decisions following it. Daugherty v. Hershberger, 386 Pa. 367, 126 A.2d 730 (1956) is cited by defendant but the opinion written by Chief Justice Stern, the author of the Davis opinion, recognizes the authority of the latter and simply holds that it 'has no bearing upon the present issue.' Brown v. City of Pittsburgh, 409 Pa. 357, 363-364, 186 A.2d 399, 403 (1962) also referred to by the defense, is of material help to the plaintiff. Its finding was: 'Therefore, if any judgment is recovered against the City, which will establish the fact that the Church was negligent and a wrongdoer, albeit one protected by an immunity from liability for its negligence, credit must be given for the sum already paid.' As has been noted the hospital involved in the instant claim was not a party to the pending cause and there is no judicial judgment of negligence against it. Pillo v. Reading Co., 232 F.Supp. 761 (E.D.D.C.Pa.1964), the remaining citation of the defense, holds that 'It is hornbook law that a satisfied judgment against one co-obligor or joint tortfeasor bars suit against others jointly responsible for the same injury.' This merely lends strength to the rightness of the Mazer plaintiff's full recovery of his judgment. The amount paid by the pospital was the ordinary buying of peace on the part of one concerned in a person's claim for damages arising out of an alleged tort. It was not the act of a tortfeasor, so established by a judgment against it which it has paid and satisfied.
 
 
 22
 The unjust enrichment argument which the defense attempts to raise is never reached and cannot be reached within the particular dimensions of this appeal. We are dealing with an ordinary malpractice tort case in which all the parties are entitled to the full benefit of the ruling state law. That law firmly holds that if the defense desired that the hospital peace payment be deducted from any plaintiff's verdict as the sum paid by a joint tortfeasor, the hospital should have been joined as a defendant and its tort-feasor liability fixed under the explicit Pennsylvania law. If that doctrine needs to be changed the matter should be called to the attention of the Pennsylvania legislature. We are bound to function in this type of litigation under the state law as it now exists. We state in passing that the total amount of damages which plaintiff will receive is an extremely modest sum in view of the damages proven.
 
 
 23
 In Nos. 15447 and 15449 the District Court order denying the motions for judgment n.o.v. of the defendant and of the third-party defendant will be affirmed.
 
 
 24
 In Nos. 15448 and 15449 the District Court order amending the amount of the plaintiff's judgment against the defendant Lipshuta and the judgment of the latter against the third-party defendant Kohn will be vacated and the case remanded to the District Court for the purpose of reinstating the original judgments in the sum of $89,318 in each instance.