Charles M. NORTON et al.

v.

Wortha BENJAMIN.

Supreme Judicial Court of Maine.

June 1, 1966.

Robinson, Richardson & Leddy, by Edward T. Richardson, Jr., Portland, for plaintiffs.

Verrill, Dana, Walker, Philbrick & Whitehouse, by John W. Philbrick, Portland, for defendant.

Before WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

WEBBER, Justice.

Pursuant to 4 M.R.S.A. § 57 (as amended by P.L.1965, Ch. 158, Secs. 1 and 2) and M.R.C.P. Rule 76B questions were certified by the District Court of the United States for the District of Maine.

The underlying facts as stated in the certification are as follows:

(a) On March 11, 1965, Charles M. Norton and Mary E. Norton filed a complaint against Wortha Benjamin, claiming damages for personal injuries and property damage sustained by the plaintiffs as the result of negligence of the defendant in an automobile accident between a car driven by the defendant Wortha Benjamin and a car driven by the plaintiff Charles M. Norton, in which the plaintiff Mary E. Norton was a passenger, at Eddington, Maine. (b) On May 4, 1965, the defendant Wortha Benjamin filed an answer to the complaint, which included a cross-claim against the plaintiff Charles M. Norton for indemnity or contribution of the amount of any damages recovered of the defendant by the plaintiff Mary E. Norton. (c) On August 18, 1965, the plaintiff Charles M. Norton filed an answer to the defendant's cross-claim. On September 22, 1965, the plaintiff Charles M. Norton filed an amended answer to said cross-claim, in which he pleaded as a bar to said cross-claim a general release given by the defendant Wortha Benjamin to the plaintiff Charles M. Norton. (d) On December 15, 1965, counsel for the plaintiff Charles M. Norton and counsel for the defendant Wortha Benjamin filed a stipulation of facts with respect to the execution of the release given by the defendant Wortha Benjamin to the plaintiff Charles M. Norton.

The general release pleaded in bar by plaintiff Charles M. Norton was in the following form:

"RELEASE AND SETTLEMENT OF CLAIM

KNOW ALL MEN BY THESE PRESENTS, THAT I, WORTHA G.

BENJAMIN of (Street) 27 Grand Avenue, (City or Town) Johnson City, (State) New York being of full age, and married ~~unmarried~~ for the sole consideration of EIGHT HUNDRED TWENTY SIX AND 16/100—Dollars to me paid by or on behalf of Charles M. Norton, the receipt whereof is hereby acknowledged, do hereby release, acquit and discharge said party or parties from all claims and demands, actions and causes of action, damages, cost, loss of service, expenses and compensation on account of, or in any way growing out of personal injuries, whether known or unknown to me at the present time, and property damage resulting or to result from an occurrence that took place on or about the 29th day of September, 1963 at or near Route #9, Eddington, Maine by reason of a vehicle owned and operated by Wortha G. Benjamin being in collision with a vehicle owned and operated by Charles M. Norton and do hereby covenant to indemnify and save harmless said party or parties from and against all claims and demands whatsoever on account of, or in any way growing out of said occurrence, or its results, both to person and property.

It is further agreed that this Release expresses a full and complete SETTLEMENT of a liability claimed and denied, regardless of the adequacy of the aforesaid payment made, and that said payment and the acceptance of this Release shall not operate as an admission of liability on the part of anyone, nor as an estoppel, waiver, or bar with respect to any claim the party or parties released may have against the undersigned.

WITNESS my hand and seal this 24 day of October, 1963.

THIS IS A RELEASE: READ BEFORE SIGNING

Witnesses:

FRANCIS J. CARNS
(Witness' Signature)
　　　WORTHA G. BENJAMIN (L.S.)
　　　　　　(Signature)"

The parties have further stipulated the following facts:

1. On September 29, 1963, in the Town of Eddington, County of Penobscot, Maine, there was a collision between an automobile operated by plaintiff Charles M. Norton, in which plaintiff Mary E. Norton was a passenger, and an automobile operated by defendant-cross-claimant Wortha G. Benjamin. Attached to defendant Benjamin's automobile was a metal trailer loaded with camping equipment.

2. On or about October 24, 1963, defendant Wortha G. Benjamin executed a release to plaintiff Charles M. Norton in consideration of $876.16.

3. In the course of negotiations prior to the execution of said release, defendant Wortha G. Benjamin presented to a claim adjuster for plaintiff Charles M. Norton's insurer the following itemized bill of his claims:

| | |
|---|---:|
| Dick Blodgett, loss of salary | $ 42.00 |
| Motel room for Dick and myself | 14 00 |
| Phone calls to Boston and home | 5 80 |
| Trailer hitch purchase | 29 36 |
| Trailer damage | 20 00 |
| Trailer top | 40 00 |
| Use of sister's car to pick up trailer | 125 00 |
| Various camping equipment, including pots, pans, silverware, stoves | 35 00 |
| Damage to automobile | 700 00 |
| | $ 1,011.16 |

4. The adjuster subsequently made an offer of settlement in the amount of $876.16, which was accepted by defendant Wortha G. Benjamin, and constituted the consideration for the release. No discussion of contribution or indemnity took place between the adjuster and the defendant."

The certificate propounds this question to this court:

Does the release given by the defendant cross-claimant Wortha Benjamin to the plaintiff Charles M. Norton, bar the cross-claim for contribution or indemnity

brought by the defendant Wortha Benjamin against the plaintiff Charles M. Norton?

■ We answer in the affirmative. The form of release employed in the instant case has a very broad sweep and is clearly designed to adjust, settle and terminate all claims and demands which the releasor may have against the releasee arising from the accident. The release is not merely of the claims for personal injuries and property damage which the releasor may have suffered as a result of the accident. It goes further than that and leaves room for no ambiguity. The parol evidence rule has application and admits of no variation of the contract which the parties made. The rule is well stated in Spaulding v. American Realty Co., (1922) 121 Me. 493, 496, 118 A. 322, 323: "Few rules in the law of evidence are of wider application than that declaring extrinsic evidence of preceding or accompanying negotiations inadmissible to vary or to contradict, or to subtract from or add to, the language of a written instrument which speaks for itself in definite and final terms, fraud not being advanced and proved." The rule can cause hardship, at least in the sense that one may find himself held to a contract which proves unprofitable or disadvantageous. Where the contract is in the nature of a full settlement and a release of *all* claims for a consideration agreed upon, one may discover on the basis of hindsight the unwisdom of his bargain. But the law deems that society gains most from the certainty and finality of such settlements and permits the clarifying intention of the parties to be shown only when the language of the written agreement of release does not clearly and unmistakably state that which was agreed.

Several courts which have had occasion to decide whether or not a general release in broad and all inclusive terms will bar a right of contribution as between joint tort feasors have answered in the affirmative. In the leading case of Killian v. Catanese, (1954) 375 Pa. 593, 101 A.2d 379 a release was given employing general and inclusive language with respect to claims and demands and particularly the phrase "especially the *liability* arising from an accident which occurred * * *." (Emphasis supplied.) When the releasor sought to bring the releasee into the case as an additional defendant to respond to a suit brought against the releasor by a third party claimant, the court held the release to be an effective bar. The court noted that no attempt had been made by the parties to limit the scope of the release, and the word "liability" in this context was of particular significance. In 1958 the Pennsylvania court had occasion to interpret a rather differently worded release in Kent v. Fair, 392 Pa. 272, 140 A.2d 445. Here the release was "from any and all actions, causes of action, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore have been or which hereafter may be sustained *by us* in consequence of an accident on or about July 11, 1954." (Emphasis ours.) Here again the releasor sought to join the releasee as additional defendant and in this instance the court deemed the language of the release not broad enough to cover damages sustained by third persons and hence no bar to the releasor's attempted action. In distinguishing Killian it characterized the language of the release in that case as "vastly more sweeping" and of "practically limitless character."

That the result in Kent was intended to be limited to its own facts and to the particular language of the release was evidenced in 1959 when the court again followed Killian in the case of Mayer v. Knopf, 396 Pa. 312, 152 A.2d 482. There the releasor, seeking to join the releasee as an additional defendant for the purpose of securing contribution, had given him a release "from all, and all manner of the liability arising out of the accident * * * (giving date and place) and especially the liability arising out of the aforesaid accident." The court deemed the release susceptible of but one reasonable interpretation and barred contribution. Quoting from Kent (supra)

the court stated "that a person who accepts money from a person against whom he has or may have a claim has it within his power to write into the release what he pleases and, in the absence of accident, fraud, or mistake, he is bound by what he writes."

Polley v. Atlantic Refining Co., (1965) 417 Pa. 549, 207 A.2d 900, 901, is the most recent Pennsylvania case dealing with this problem which has come to our attention. There the release was general and couched in inclusive language. The court said in part: "It would be difficult to conceive of a durable umbrella with a greater diameter and circumference to protect (the releasee) from financial claims rising from the event of August 5, 1961, and falling down upon all parties involved in its tragic periphery, than this release. * * * (Appellant) argues that the release in question was not intended by the parties to include a release of any future rights in the original defendant to join (the releasee) as an additional defendant or to preclude it from claiming contribution. This contention, while forcibly advanced, shatters against the stone wall of the release which in the most comprehensive language possible states that (the releasors) 'remise, release, acquit, and forever discharge' (the releasee) from 'any and every claim, demand, right or cause of action of whatever kind or nature * * * arising from an accident which occurred on or about the fifth day of August, 1961, at or near Carnegie, Penna., for which I/We have claimed the said (releasee) to be legally liable.' The release itself is entitled 'RELEASE OF ALL CLAIMS'. Above the signatures of (the releasors) appears the admonition: 'Read Carefully Before Signing.' * * * What was the specific consideration for the $1131.02? The promise by (the releasor) that from now on it had no claim *of any kind or nature* against (the releasee)." It should also be noted that the $1131.02 referred to was the exact amount of the property damage suffered by the releasor. In short, there was no overage allowance in money for the release of the right to contribution, yet the court did not view this as a factor affecting the result.

■■ We are aware that it has long been common practice for persons whose liability for tort was extremely doubtful to make some offer of settlement to save the time and expense of litigation. More often, of course, such offers are made and settlements effected by insurance companies on their behalf. An indispensable feature of such settlements of dubious liability claims is often, and perhaps usually, the discharge of *all* claims by one general release. It follows that the amount of money paid, even though seemingly related to but one aspect of damage such as the property damage, is not necessarily indicative that the parties intended to leave any claims open and unsettled. When such an intention does exist, the language of a broad general release is not appropriate since it negatives such an intention and forecloses the prosecuting of later claims. As a matter of policy the settlement of such claims should be encouraged and we are not persuaded that such a policy would be furthered by opening the door to attacks upon and contradictions of the common forms of broad and inclusive general releases which have heretofore provided the means of effectuating such settlements.

In McNair v. Goodwin, (1964) 262 N.C. 1, 136 S.E.2d 218, 223 the court reached a like conclusion. The court said in part: "The 'cause of action' for contribution certainly is embraced within the term, 'causes of action *whatsoever.*' The terms of the release clearly include the cross-action for contribution. Where a written agreement is explicit, the court must so declare, irrespective of what either party thought the effect of the contract to be. * * * The plain provisions of the release are sufficient to bar any manner of claim or action, arising out of damages caused by the collision in question, which (the releasor) may assert against (the releasee)." We note in passing that the release in the instant case contains the equivalent phrase "all * * * causes of action."

A like result was reached by a single judge in Brown v. Eakin, (1957) 11 Terry 574, 137 A.2d (Del.Sup.) 385 and by a single justice of our Superior Court in the unreported case of Warner v. Pinfold, (1965—Cumberland).

We have read with care cases which have reached a contrary result with respect to the effect of a general release upon the right to contribution.

■ In Leitner v. Hawkins, (1949) 311 Ky. 300, 223 S.W.2d 988, although the release was in general and inclusive terms, the court deemed it to be no bar to a claim for contribution. Two grounds were advanced in support of this conclusion. 1. The court construed the release as relating only to the releasor's claims for personal injuries or property damage and not as an undertaking "to indemnify (the releasee) against any loss as against someone else." Query then whether the presence of an indemnification clause such as is found in the release in the instant case would have affected the result. 2. The court concluded that the right to contribution matured after the release was given and would not be "discharged by release unless expressly provided for or falling within the fair import of the terms of the release." As to this we say only that in our view the right to contribution was inchoate and releasable and was embraced within the fair meaning and intent of certain of the inclusive phrases in the release in the instant case. McAllister v. Jones, (1956) 208 Or. 365, 300 P.2d 973; Polley v. Atlantic Refining Co. (supra).

The Kentucky court followed Leitner in the later case of Edester v. Heady, (Ky. 1963) 364 S.W.2d 811, reiterating its position that there was no release of a "subsequently maturing claim for contribution."

In 1960 this problem was before the court in Buckley v. Basford, 184 F.Supp. 870 (D.Me.). It was there concluded that a latent ambiguity existed in the release and that the intention of the parties with respect to the right to contribution might be shown by extrinsic evidence. On the basis of evidence as to the surrounding circumstances the court held that "claims for contribution were not within the contemplation of the parties at the time the release was executed" and the release was therefore not a bar. Although the court was required to interpret and apply Maine law there was no available precedent in this jurisdiction, nor was the method of certifying questions to this court then in existence. Some of the opinions cited above had not then been written. The court in Buckley noted that "[c]ounsel have cited to the Court no case dealing with the precise issue here presented", and in fact none of the cases which we have cited above were considered or discussed in Buckley. We are therefore by no means certain that the conclusion reached in Buckley necessarily reflects the present view of that court, especially in the light of the fact that the very question there decided has now been certified to us for opinion.

■ On balance we are persuaded that the Pennsylvania rule better accords with the familiar and accepted application of the parol evidence rule and will in the long run better serve the policy of fostering and encouraging the settlement of claims. We think it no more than fair and reasonable to require that one who purports to release *all* claims should clearly specify any that he intends and desires to reserve. As was appropriately stated in Tupper v. Hancock, (1946) 319 Mass. 105, 64 N.E.2d 441, 443: "Where, as here, the releases were absolute and unequivocal in their terms, they cannot be explained by parol evidence and must be construed according to the language that the parties have seen fit to use. * * * If any existing liability was intended to be excepted, it should have been expressly set forth in the releases."

The clerk will transmit these instructions to the District Court of the United States, District of Maine. All concur.

So ordered.

WILLIAMSON, C. J., took no part in these proceedings.