Milton MAZER, Administrator of the Estate of Israel Abrams, Assignee of Hattie Lipshutz, Executrix of the Estate of Benjamin Lipshutz, Deceased

v.

SECURITY INSURANCE GROUP

and

The Medical Protective Company of Fort Wayne, Indiana.

Civ. A. No. 69-1353.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Nov. 22, 1971.

Marshall A. Bernstein, Philadelphia, Pa., for plaintiff.

Perry S. Bechtle, Philadelphia, Pa., for Medical Protective Co.

Henry T. Reath, Philadelphia, Pa., for Security Ins. Group.

## OPINION

DITTER, District Judge.

The question in this case is whether two insurance companies were negligent in the handling of a malpractice action against their insured, a doctor. The matter comes before me on a motion for summary judgment by plaintiff, the assignee of the insured physician. I conclude that the issue is one for a jury and therefore deny the motion.

On December 17, 1957, surgery was performed upon Israel Abrams by Doctor Benjamin Lipshutz, at the Albert Einstein Medical Center in Philadelphia. At that time there were two patients in the hospital with the same name but different blood types. Mr. Abrams was given a transfusion of incompatible blood which caused his death. The blood in question came from the hospital's bloodbank where Albert Kohn was employed as its chief technician.

Milton Mazer, who was appointed administrator of Mr. Abrams' estate, negotiated a settlement with Einstein Medical Center for $60,000. In return, Mazer executed a release and covenant not to sue the hospital, its agents and employees. However, Mazer reserved the right to make claims against certain doctors, including Doctor Lipshutz, the surgeon, and Doctor Peter Chodoff, the anesthesiologist, under whose direction the blood was given to decedent. Separate actions were brought against both doctors. In the suit in which Doctor Lipshutz was a defendant, Mr. Kohn was joined as a third-party defendant. In that against Doctor Chodoff, the hospital was joined as a third-party defendant. The attorneys for Doctor Lipshutz also made a belated effort to join the hospital but the joinder motion was considered to be untimely and was stricken.

The two cases were consolidated for trial and special interrogatories were submitted to the jury. It rendered a verdict that neither doctor was individually negligent but that the negligence of an employee of the hospital was a contributing cause to the death of Mr. Abrams. The jury set plaintiff's damages at $89,318. However, no money judgment was entered on the verdict because there was no direct action by the plaintiff against the hospital and because of the previously executed release. Instead, the court molded the jury's verdict to be a judgment for both defendants and refused plaintiff's motion for a new trial.[1]

Plaintiff appealed both cases to the Circuit Court of Appeals, which affirmed the judgment so far as Doctor Chodoff was concerned. However, in the action against Doctor Lipshutz, the court held that the plaintiff was entitled to a new trial restricted to the sole issue of Doctor Lipshutz's vicarious liability for Kohn's negligence in or near the operating suite.[2] In the resulting trial, the jury found that Lipshutz was vicariously liable under the "Captain of the Ship" doctrine for Kohn's negligence.[3] Judgment was entered in favor of the plaintiff and against Doctor Lipshutz for $29,318., that is, the amount of the

---

1. Mazer v. Lipshutz, Mazer v. Chodoff, 31 F.R.D. 123 (E.D.Pa.1962).

2. Mazer v. Lipshutz, 327 F.2d 42 (3rd Cir. 1964).

3. See McConnell v. Williams, 361 Pa. 355, 362, 65 A.2d 243 (1949).

original judgment less the hospital's payment of $60,000. In addition, judgment was entered in favor of Doctor Lipshutz against Kohn in the sum of $29,318. Thereafter, the Circuit Court of Appeals directed this court to reinstate both judgments in the sum of $89,318. on the theory that there was no judicial determination that the hospital was a joint tortfeasor and thus nothing which would entitle Doctor Lipshutz to credit for the payment it had made to plaintiff.[4]

At the time of the operation, Doctor Lipshutz carried two insurance policies which protected him from malpractice claims. Security Insurance Group had agreed to satisfy all sums up to $40,000. on each claim, and Medical Protective Company to pay damages up to $10,000. on each claim. In addition, both policies provided for the assumption of the defense of a claim and unlimited payment of attorney's fees. Both companies have made payment to plaintiff in the full amount of their liability, a total of $50,000., leaving $39,318. as an unpaid claim against the estate of Doctor Lipshutz, who has died in the interim.

In the present action suit was brought against the insurance companies for negligently handling the defense of Doctor Lipshutz and the claim was assigned to plaintiff, the administrator of Mr. Abrams' estate. It is plaintiff's theory that if the Einstein Medical Center had been joined as a third-party defendant in the suit against Doctor Lipshutz, its payment of $60,000. would have been treated as a contribution by a joint tortfeasor. That contribution would have reduced plaintiff's indebtedness to $29,318. which, in turn, would have been adequately covered by his insurance. Consequently, the estate of Doctor Lipshutz would have no outstanding judgment against it resulting from the death of Mr. Abrams.

 Plaintiff contends that summary judgment should be granted since there is no genuine issue of fact. I disagree. As a general proposition, issues of negligence are not susceptible to summary adjudication because they require the application of the reasonable man's standards to that which has occurred. If reasonable minds can reach different conclusions and inferences from the admitted facts, the issues must be submitted to a jury: Marsden v. Patane, 380 F.2d 489, 491 (5th Cir. 1967). In Gross v. Southern Ry., 414 F.2d 292 (5th Cir. 1969), it is pointed out that the concept of negligence is elusive and requires a jury to pass upon the reasonableness of the actor's conduct in light of all of the circumstances. Therefore, even if the historical facts are conceded, few negligence cases can be disposed of by summary judgment.

 Whether a carrier should be held to have been negligent in the handling of a claim against its insured is a question for a jury to determine: Bell v. Commercial Insurance Company of Newark, New Jersey, 280 F.2d 514, 517 (3rd Cir. 1960). It should also be kept in mind that all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing summary judgment: United States v. Diebold, Incorporated, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

 For the purposes of the present motion, plaintiff's only allegation of negligence by defendants was the failure of counsel to bring Einstein into the case as a third-party defendant. Under Pennsylvania law, a verdict against a tortfeasor is reduced by any payment made by a joint tortfeasor to obtain a release. It was on this basis that the trial judge applied to the total damages of $89,318. the $60,000. previously paid by the hospital. When it reversed this court's molding of the verdict, the Circuit Court pointed out a judicial determination that Einstein was a joint tortfeasor had never been made and such a

---

4. Mazer v. Lipshutz, 360 F.2d 275 (3rd Cir. 1966).

finding was essential if a credit was to be allowed.

■ In the suit against Doctor Lipshutz, Kohn, the bloodbank technician whose mistake cost Abrams life, was joined as a third-party defendant. Any liability on the part of the hospital was predicated upon Kohn's negligence or that of some other hospital employee and plaintiff's release to the hospital also released its employees, a category which included Kohn. Since the liability of Doctor Lipshutz was also based upon Kohn's negligence, counsel's expectations that the joinder of Kohn would allow Doctor Lipshutz to take advantage of the release which Kohn received was not unreasonable. The knowledge that the hospital itself would have to be joined to obtain the credit for its payment is more apparent retrospectively than it was prospectively. Therefore, it is impossible to say as a matter of law that counsel for defendants was negligent in handling the suit against Doctor Lipshutz.

■ The decisions of the trial judge demonstrate the absence of obvious negligence. At the conclusion of the first trial and based upon the jury's answers to interrogatories, the verdict was molded and judgment was entered in favor of Doctor Lipshutz. At the conclusion of the second trial, the verdict was molded to give Doctor Lipshutz credit for the hospital's payments. Although subsequent events have shown the trial judge was in error in both instances, his rulings show the uncertainty of the law as it applied to the facts then before the court. The underlying thinking of both court and counsel was the same on a close question of law. In so far. as pleadings are concerned and the general conduct of litigation, a lawyer is only responsible for those mistakes which indicate a lack of the attainments commonly possessed and exercised by legal practitioners of ordinary skill and capacity: 7

C.J.S. Attorney and Client § 146, pp. 982–984. Such a lack of skill is not so apparent that summary judgment would be justified.