507 F.2d 1338
 Milton MAZER, Administrator of the Estate of Israel Abrams,
assignee of Hattie Lipshutz, Executrix of the
Estate of Benjamin Lipshutz, Deceased, Appellant,
v.
SECURITY INSURANCE GROUP and the Medical Protective Company
of Fort Wayne, Indiana, Appellees.
 No. 74-1070.
 United States Court of Appeals, Third Circuit.
 Argued Sept. 4, 1974, Submitted en banc Jan. 8, 1975.
Decided Jan. 23, 1975.
 
 Marshall A. Bernstein, Robert M. Bernstein, Bernstein, Bernstein, & Harrison, Philadelphia, Pa., for appellant.
 James J. McCabe, Henry T. Reath, Jane D. Elliott, Duane, Morris & Heckscher, Philadelphia, Pa., for appellee Security Ins. Group.
 Barry F. Greenberg, Perry S. Bechtle, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadlphia, Pa., for appellee, The Medical Protective Co.
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 69-1353).
 Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.
 Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 The plaintiff Mazer, Administrator of the Estate of Israel Abrams, in this diversity contract action, is the assignee of Hattie Lipshutz, Executrix of the Estate of Benjamin Lipshutz, who was the insured on two policies of liability insurance issued by the defendants Security Insurance Group and The Medical Protective Company of Fort Wayne, Indiana (hereinafter collectively the insurers). In December 1957 Israel Abrams was admitted to the Albert Einstein Medical Center in Philadelphia for elective surgery during the course of which a transfusion of incompatible blood was administered which resulted in kidney failure. Abrams died as a result of kidney failure in January 1958. Mazer procured from Albert Einstein Medical Center a settlement of $60,000, and on December 31, 1958 executed a release in its favor of any claim for bodily injury or death of Abrams. On December 30, 1958 Mazer instituted suit against Dr. Benjamin Lipshutz, the surgeon who performed the elective surgery.[1] The insurance carriers, whose indemnity undertakings totaled $50,000, undertook his defense, and counsel selected by them entered an appearance on January 28, 1959. On January 30, 1959 that attorney filed an answer which admitted that Dr. Lipshutz performed the surgery but denied the allegations of the complaint that those assisting in the operation were agents, servants or employees of his. The answer alleged:
 
 
 2
 'On the contrary, it is averred that those assisting in the operation were agents, servants or employees of Albert Einstein Medical Center, Southern Division.'
 
 
 3
 Those assisting in the operation included Dr. Peter Chodoff, anesthesiologist and Albert Kohn, the chief blood bank technician employed by the hospital who had handled the selection of the blood delivered to the operating room. On March 9, 1960 counsel employed by the insurance carriers successfully moved for leave to join Dr. Chodoff as a third-party defendant. Dr. Chodoff was not served with process in this action. On November 21, 1961 counsel employed by the insurance carriers successfully moved for leave to join Albert Kohn as a third-party defendant. Neither at the time of filing the answer nor within the time permitted by Rule 19(a) of the Local Rules of the Eastern District of Pennsylvania was a motion made on Dr. Lipshutz's behalf to join the hospital as a third-party defendant.
 
 
 4
 Mazer had, in December 1959, instituted a separate action against Dr. Chodoff. In that action counsel for Dr. Chodoff filed a motion to join Dr. Lipshutz as a third-party defendant. This motion was granted on March 30, 1960. On July 11, 1960 counsel for Dr. Chodoff filed a motion to join the hospital as a third-party defendant and this motion was granted by an order dated August 17, 1960. By an order dated March 30, 1960 both of Mazer's suits were consolidated for trial.
 
 
 5
 On November 29, 1961 counsel on behalf of Dr. Lipshutz made a motion to join the hospital as a third-party defendant which, on January 3, 1962, was denied as untimely under Local Rule 19(a).
 
 
 6
 The consolidated cases were tried commencing on January 8, 1962, the court having on January 5, 1962 severed the third-party action of Lipshutz v. Kohn. The trial resulted in verdicts on interrogatories which found no negligence on the part of Dr. Chodoff, no negligence on the part of Dr. Lipshutz, but negligence on the part of Kohn, the employee of the hospital. Interrogatory No. 3 was framed: 'Was there negligence on the part of any employee of (the hospital) which was a contributing cause of the death of Israel Abrams', and it was answered 'Yes.' Mazer v. Lipshutz, 327 F.2d 42, 46 (3d Cir. 1963) (Mazer I). The jury assessed damages at $89,318 but no money judgment was entered since the settlement and release precluded any direct action against Kohn or the hospital. Judgments were entered by the district court in favor of Lipshutz and Chodoff, and these were appealed. This court affirmed the judgment in favor of Dr. Chodoff, but reversed the judgment in favor of Dr. Lipshutz on the ground that the district court's charge erroneously took from the jury consideration of the vicarious liability of Dr. Lipshutz as 'captain of the ship' in the operating room for the negligence of Kohn. We ordered a new trial. 327 F.2d at 55.
 
 
 7
 On the retrial the amount of damages was established at $89,318 by the prior verdict. The third-party action by Dr. Lipshutz against Kohn was tried together with the issue of Dr. Lipshutz's vicarious liability. The jury found that under the Pennsylvania 'captain of the ship' doctrine, Dr. Lipshutz was vicariously liable for Kohn's negligence.[2] There was no dispute that Kohn was an employee of the hospital since his status had been established by verdict in the first trial. Judgment was entered for Mazer against Dr. Lipshutz for $89,318 and for Dr. Lipshutz against Kohn, the active wrongdoer, for the same amount.
 
 
 8
 The result of the jury findings was that Kohn's negligence was attributable vicariously both to his employer, the hospital, and to Dr. Lipshutz. On April 30, 1965 the district court granted the motion of counsel for the insurance carriers, made on the authority of 12 P.S. 2085,[3] to amend both judgments by reducing them by $60,000 each to $29,318 respectively. The reduction was equal to the amount paid by the hospital in settlement.
 
 
 9
 Once again Mazer appealed, contending that the district court erred in reducing the judgment by the $60,000 paid by the hospital. Once again we reversed, holding that 12 P.S. 2085 was inapplicable to payments made by a joint tortfeasor in the absence of a judicial determination as to the alleged joint tortfeasor status as such. Marzer v. Lipshutz, 360 F.2d 275 (3d Cir. 1966), cert. denied, 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 68 (1966) (Mazer II). We relied on what we thought to be the proper reading of Davis v. Miller, 385 Pa. 348, 123 A.,2d 422 (1956). The effect of Mazer II was to deprive Dr. Lipshutz's Estate, as well as his liability insurance carriers, of a $60,000 reduction in judgment liability. We remanded with directions to reinstate the full judgment. The insurance carriers paid $50,000 plus interest and costs, leaving an unpaid balance on the judgment of $39,318 for which Dr. Lipshutz was personally liable. He having died, his estate assigned to Mazer its claim against the insurance carriers, and Mazer stated the instant action.
 
 
 10
 In the final pretrial order in this case Mazer submitted as legal issues:
 
 
 11
 '1. Negligence of the defendants.
 
 
 12
 . . . .enc
 
 
 13
 5. Defendants breached their contract to adequately represent Lipshutz.'
 
 
 14
 The case was tried without a jury. Mazer contended, and continues to contend, that the basis for his claim against the carriers is the undisputed failure of the attorney employed by them to move to join the hospital as a third-party defendant so as to protect Dr. Lipshutz's claim against it under 12 P.S. 2085. His case consisted primarily of a nineteen paragraph stipulation of facts in the final pretrial order, certain requests for admissions, and documentary evidence, including the insurance policies on which the suit is based. The stipulations and documents established the facts outlined above. Mazer offered no expert testimony. The district court denied defendants' motion for a directed verdict at the close of plaintiff's case.
 
 
 15
 The defendants then offered expert testimony described in an offer of proof:
 
 
 16
 'I propose to prove by this witness that it was not negligence for the then counsel on behalf of Dr. Lipschutz from 1958 to 1960 to fail to join the hospital as an additional defendant.' (Tr. at 35).
 
 
 17
 The expert witness was asked a hypothetical question which, with the usual objections, rulings, and qualifications, may be summarized as asking whether between 1958 and 1960 there was a failure to follow the standards a lawyer should follow by not joining the hospital as a third-party defendant. He answered that there was no such failure, and elaborated:
 
 
 18
 'I believe that it is often improper to join third-party defendants. I think that the burden, as far as a lawyer is concerned, should be against joinder always and to join only when you are convinced the joinder will help your client. You cannot make that judgment until you have enough facts at your disposal to make it clear to you that you should join a third-party defendant.' (Tr. at 47).
 
 
 19
 The district court accepted the expert's opinion in answer to the hypothetical question, which as it interpreted it was that the failure to join the hospital 'did not constitute a lack of the attainment or skills commonly practiced and exercised by attorneys of ordinary skill and capacity' but was an exercise of judgment or a tactical choice. 368 F.Supp. at 422. We affirm, but for reasons different from those relied upon by the district court.[4]
 
 
 20
 The district court, in considering the defendants' liability to Mazer, which in turn depended upon their duty toward Dr. Lipshutz, properly felt itself bound by our decision in Mazer II. That case held that Dr. Lipshutz lost the benefit of 12 P.S. 2085 because the hospital was not joined as a party, even though in Mazer I it had been adjudicated that Kohn was the primary tortfeasor and an employee of the hospital. If the holding as to Dr. Lipshutz's rights under 12 P.S. 2085 was incorrect as a matter of Pennsylvania law, there is simply no basis for asserting any breach of the defendants' duty to Dr. Lipshutz. It has not been suggested that a liability insurance carrier in Pennsylvania bears the full risk of any error of law by an appellate court which results in an insured's being liable in excess of policy limits. We conclude that Mazer II misapplied Davis v. Miller, supra, and that there was no breach of any duty owed to Dr. Lipshutz.
 
 
 21
 Since Mazer II we have had occasion to revisit the Davis v. Miller problem in Griffin v. United States, 500 F.2d 1059 (3d Cir. 1974). There we held that the joint tortfeasor status of a settling party could, for purposes of 12 P.S. 2085, be established not only by a judgment but also by a provision in the joint tortfeasor release in which the injured party acknowledges that in any lawsuit the verdict will be reduced to the extent agreed upon. The failure of the United States to make a pro forma motion for joinder was held to be immaterial. The holding in Griffin makes clear that the issue is not whether the settling party was technically joined in the lawsuit. Rather it is whether by some reliable means there was a determination, either judicially or by the plaintiff's concession, that the settling party was a joint tortfeasor. The object of the Davis v. Miller rule is, as we said in Griffin v. United States, supra, to avoid having a sole tortfeasor benefit from a third-party payment not made in satisfaction of a tort liability. Here it is clear that the hospital's payment was made because Kohn was its employee. Moreover, there was an adjudication both of Kohn's negligence and of his employee status. Thus the Pennsylvania policy against reducing an injured party's recovery by the amount received from a volunteer has not been violated. The fact that the payment was made by or on behalf of a possibly immune charitable organization is irrelevant. Brown v. City of Pittsburgh,409 Pa. 357, 362-364, 186 A.2d 399, 402-403 (1962). Thus Lipshutz should have been afforded the benefit of 12 P.S. 2085.
 
 
 22
 We recognize that this holding implicitly suggests that Mazer has already been substantially overpaid since on account of a verdict establishing damages of $89,318 he has received $60,000 in settlement from the hospital and $50,000 from the defendants. The Mazer II case is, however, a matter beyond collateral attack. But the fact that our erroneous prior judgment is beyond collateral attack does not require that we compound our prior misapplication of Pennsylvania law by requiring payment of an additional $39,318.
 
 
 23
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 During the pendency of the litigation Dr. Lipshutz died and his estate was substituted. In the interest of simplicity we have usually referred to Dr. Lipshutz rather than his estate
 
 
 [2]
 The jury also found in favor of Lipshutz's Estate in its action over against Kohn
 
 
 [3]
 'A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.'
 
 
 [4]
 The district court opinion focused upon an insurance carrier's duty to defend and assumed that this duty was measured by reference to the level of skills commonly practiced by attorneys in the community. In view of the basis for our affirmance we need not consider whether, as the appellant contends, the district court took too narrow a view of the several duties arising from a liability insurance carrier's contractual obligations. But see Gray v. Nationwide Mutual Ins. Co., 422 Pa. 500, 223 A.2d 8 (1966); Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963); Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 134 A.2d 223 (1957)