**Suliman D. AL–HAZMI, Plaintiff,**

**v.**

**CITY OF WAUKEGAN, Defendant and Third Party Plaintiff,**

**v.**

**Derek L. HASTY and Mary Woods, individually and d/b/a Mama Mia's Restaurant, Third Party Defendants.**

No. 81 C 5444.

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1984.

Gregory P. Guth, Law Offices of Marvin A. Brustin, Ltd., Chicago, Ill., for plaintiff Al-Hazmi.

John R. Garofalo, Kiesler & Berman, Ltd., Chicago, Ill., for defendant and third party plaintiff Waukegan.

Larry R. Wikoff, Brody, Gore, Fineberg & Wikoff, Ltd., Chicago, Ill., for third party defendant Woods.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Suliman D. Al-Hazmi ("Al-Hazmi") has filed this diversity action [1] against the City of Waukegan ("Waukegan") for personal injuries arising out of an automobile accident. Waukegan has in turn filed two third-party complaints:

1. on November 6, 1981 against Derek L. Hasty ("Hasty") and

2. on May 11, 1983 against Mary Woods individually and doing business as Mama Mia's Restaurant ("Woods").

Woods now moves under Fed.R.Civ.P. ("Rule") 12(b)(6) to be dismissed for Waukegan's failure to state a claim upon which relief can be granted. For the reasons stated in this memorandum opinion and order, Woods's motion is denied.

### Facts [2]

At about 3 a.m. November 23, 1980 Al-Hazmi was driving north on Green Bay Road in Waukegan. Because Al-Hazmi's car lights were not working (apparently the electrical circuits were causing problems), a Waukegan police officer in a patrol car stopped Al-Hazmi and ordered him to get out of his car. While the two of them were standing (at the officer's direction) between Al-Hazmi's car and the police car parked just behind it on the road, Hasty's car came along and struck the rear of the police car, crashing it forward into Al-Hazmi and then into his car and causing grave injuries to Al-Hazmi's legs.

Both Waukegan's third-party complaints seek contribution for any amounts Waukegan may be found to be liable for to Al-Hazmi, based on (1) Hasty's negligent operation of his own vehicle and (2) Woods's having served Hasty alcoholic beverages so as to cause his intoxication and consequently Al-Hazmi's injuries.

### Woods's Contentions

Woods raises three arguments [3] against Waukegan's third-party action:

1. Illinois recognizes no common-law action for negligence against dram shops. Woods's liability must then be predicated solely on the Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43, ¶ 135 ("Paragraph 135").

2. Woods is not subject to liability in tort within the meaning of the Illinois Contribution Act (Ill.Rev.Stat. ch. 70, ¶¶ 301–305) because Waukegan failed to file its action within the one-year time period specified in Paragraph 135. Timely filing is a precondition to Woods's liability.

3. Even if Waukegan's action is timely, Waukegan is not entitled to recover more than the liability limit specified in Paragraph 135.

Waukegan retorts with various more or less defensible responses, discussed later in this opinion.

Because the tort contribution concept has been so late in coming to Illinois law,[4] this

---

1. Al-Hazmi is a citizen of Saudi Arabia. At the time of the occurrence he was a member of the Saudi Arabian navy temporarily assigned to Great Lakes Naval Station. In this tort action Illinois choice-of-law rules, applicable under *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), look to Illinois substantive law. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970).

2. On the current motion to dismiss, well-pleaded allegations of both the complaint and the third-party complaint are taken as true, with all reasonable factual inferences taken in Waukegan's favor. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977).

3. "Three arguments" is not literally accurate. As the text discussion will show, the first two must combine to get Woods out of the case. If either is unsuccessful Woods remains as a defendant, for the third argument is only liability-limiting (not liability-eliminating).

4. *Skinner v. Reed-Prentice Div. Package Mach. Co.,* 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437, *cert. denied sub nom. Hinkley Plastic, Inc. v. Reed-Prentice Div. Package Mach. Co.,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978), marked the Illinois Supreme Court's dramatic (and sharply divided) overthrow of the common-law no-contribution rule. Because the total effect and implications of *Skinner* were unclear, the

case falls in the uncharted interstices between the lines marked out by the statutes and case law. It would be an ideal candidate for asking definitive resolution by the Illinois courts (whose law, under *Erie v. Tompkins* principles, this Court must try to predict). Unfortunately the Illinois Supreme Court has seen fit to extend that privilege only to our Court Appeals and the United States Supreme Court (Ill.S.Ct. Rule 20, effective October 1, 1983), so this Court must venture into the unknown.

### Common-Law Negligence

■ Waukegan brings its action against Woods under the Contribution Act, Ill.Rev. Stat. ch. 70, ¶ 302(a) ("Paragraph 302(a)"):

> Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

Nothing in Paragraph 302(a) itself creates tort liability. It merely provides a way for co-tortfeasors to apportion, in accordance with their relative culpability (Ill.Rev.Stat. ch. 70, ¶ 303 ("Paragraph 303")), the damages they have caused plaintiff. To compel Woods to contribute, Waukegan must show Woods is or was (a question dealt with in the following section) "subject to liability in tort" to Al-Hazmi.[5] *Germann v. Pekow*, 531 F.Supp. 355, 356 n. 3 (N.D.Ill.1981).

Woods's liability to Al-Hazmi can arise only out of Paragraph 135:

> Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein, or who

having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors.... In no event shall the judgment or recovery under this Act for injury to the person or to the property of any person as aforesaid exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured where such injury occurred prior to July 1, 1956, and not exceeding $20,000 for each person so injured after July 1, 1956. Every action hereunder shall be barred unless commenced within one year next after the cause of action accrued.

Illinois courts have consistently held no common-law cause of action for negligence exists against one serving intoxicating liquors to an adult person. Liability is created by statute or not at all. *Demchuk v. Duplancich*, 92 Ill.2d 1, 5, 64 Ill.Dec. 560, 562, 440 N.E.2d 112, 114 (1982).

Waukegan argues *Morgan v. Kirk Bros., Inc.*, 111 Ill.App.3d 914, 67 Ill.Dec. 268, 444 N.E.2d 504 (2d Dist.1983) created a direct cause of action against dram shops under the Contribution Act independently of the Dram Shop Act. That contention mischaracterizes *Morgan*, which stated specifically (111 Ill.App.3d at 916, 67 Ill. Dec. at 270, 444 N.E.2d at 506):

> The Dram Shop argues, and it is undisputed, that its liability is solely based on the Dram Shop Act.

All *Morgan* decided in that respect was:

> 1. Statutory tort liability to the injured plaintiff exists under the Dram Shop Act.
> 2. Even though a co-tortfeasor is liable to the same plaintiff on a different tort theory, that tortfeasor can obtain

Illinois General Assembly promptly got into the act by passing the Contribution Act. In turn the ramifications of the statute continue to require ongoing judicial exposition. See, e.g., Kissel,

*Developments in Third Party Practice, Contribution and Indemnity*, 71 Ill.B.J. 654, 716 (1983).

5. Waukegan has alleged nothing to show a duty owed by Woods to Waukegan.

contribution from the dram shop owner under Paragraph 302(a)'s broad language.

Thus *Morgan* clearly did not overrule (as though it could) recent and controlling Illinois Supreme Court authority (*Demchuk*) by creating a common-law cause of action for negligence against dram shops. Woods accurately says her liability must find its source only in the Dram Shop Act—but *Morgan* emphasizes that means her liability to Al-Hazmi, *not* to Waukegan.[6]

### Limitation of Actions

[2] Woods next points to the final provision of Paragraph 135:

Every action hereunder shall be barred unless commenced within one year next after the cause of action accrued.

That, says Woods, is a precondition to her liability in tort. For that proposition she invokes *Demchuk*, 92 Ill.2d at 6–7, 64 Ill. Dec. at 563, 440 N.E.2d at 115:

[A] special limitation in a purely statutory cause of action, unlike a general statute of limitations, operates as a limitation of the liability itself and not the remedy alone. It is a condition attached to the right to bring the action, and plaintiffs must allege or state facts showing that the action is brought within the time prescribed or they have failed to bring themselves within the compass of the Act.

*Accord, Shelton v. Woolsey*, 20 Ill.App.2d 401, 404, 156 N.E.2d 241, 242 (3d Dist. 1959).

Unfortunately Woods's position is oversimplistic. Waukegan's right to sue her stems not from the *Dram Shop* Act but from the *Contribution* Act. And for that purpose the controlling question is when, in temporal terms, the Paragraph 302(a) determination must be made that Waukegan and Woods "are subject to liability in tort arising out of the same injury to [Al-Hazmi]": as of the date his injury occurred, or

as of the later date Waukegan sought to inject Woods into this action.

Though that issue is one of first impression where one tortfeasor's ground for being "subject to liability in tort" is the Dram Shop Act, the identical question is *always* posed by the Contribution Act. It is scarcely news that one of the most sweeping (and controversial) aspects of the contribution doctrine (whether judge-made or legislative) is its impact on notions of repose embodied in limitations statutes. Together with its enactment of the statutory right of contribution, the Illinois legislature has created a special limitations period for assertion of that right, Ill.Rev.Stat. ch. 110, ¶ 13–204 ("Paragraph 13–204"):

No action for contribution among joint tortfeasors shall be commenced with respect to any payment made in excess of a party's pro rata share more than 2 years after the party seeking contribution has made such payment towards discharge of his or her liability.

And the legislature has also prescribed in the Contribution Act, Ill.Rev.Stat. ch. 70, ¶ 305 ("Paragraph 305") that the right may be asserted in a separate action as well as by a third-party complaint like Waukegan's:

A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action.

Thus if a plaintiff injured by joint tortfeasors opts to sue only one of them, bringing the action (say) one day before the two-year tort statute of limitations has run out, the Illinois General Assembly has decided the other tortfeasor may be unpleasantly awakened from his or her statutorily-conferred "repose" many years later—by a claim for contribution from the co-tortfeasor fully two years after an adjudication of liability in the main case. On the not-un-

---

6. Waukegan's Third-Party Complaint against Woods may be read as characterizing Woods's liability to Al-Hazmi only in negligence terms. Because of the liberal principles voiced in *Conley v. Gibson,* 355 U.S. 41, 45–46, 47–48, 78 S.Ct.

99, 101–102, 103, 2 L.Ed.2d 80 (1957) this Court has analyzed that claim in Dram Shop Act terms. In light of this opinion Waukegan may amend its pleading accordingly.

reasonable assumption the original action may take (say) four years to reach trial, the claim for contribution may then come as late as (say) *eight* years after the accident —or, given the Paragraph 13–204 test of "payment towards discharge of his or her liability," even at the much later date when appeal rights have been exhausted and the tortfeasor actually coughs up. That drastic potential has of course not gone unnoticed.[7]

To focus directly on the question of how to read the "subject to liability" language in the Contribution Act, this Court finds instructive the discussion in *Morgan*, 111 Ill.App.3d at 918 & n. 2, 67 Ill.Dec. 271 & n. 2, 444 N.E.2d at 507 & n. 2 (citations omitted):

> Although the act is styled "An Act in Relation to Contribution Among Joint Tortfeasors," neither section 302(a) nor the published Legislative History requires that the tortfeasors be joint in the strict sense that their tortious acts be simultaneous, or that they act in concert, before contribution will lie.[2] The only apparent requirement for contribution between co-tortfeasors is that recovery over be based on the same injury to person or property.

---

[2] The currently accepted definition of the term "joint tortfeasors" includes all cases where there is joint liability for a tort, whether the acts of those liable were concerted, merely concurrent, or even successive in time; and that definition has been followed under the statutes allowing contribution.

That implies strongly the perspective from which the existence of joint liability must be viewed is the occurrence of the *injury* to the original plaintiff and not the filing of *suit* against the respective tortfeasors.[8] And that implication is borne out by the well-understood concept that the *right* of contribution arises at the time of injury, though the *cause of action* for recovery in contribution ripens at the later date when payment is made. Until that later date the *right* exists, albeit in inchoate form. *Verson Allsteel Press Co. v. Major Spring & Manufacturing Co.*, 105 Ill.App.3d 419, 423, 61 Ill.Dec. 303, 306, 434 N.E.2d 456, 459 (1st Dist.1982); see Horan, *Contribution in Illinois: Skinner v. Reed-Prentice and Senate Bill 308*, 61 Chi.B.Rec. 331, 333 (1980).[9]

In those terms, then, both Waukegan and Woods became "subject to liability in tort" to Al-Hazmi instantaneously on his suffering the "same injury to person or property." Each at that time acquired an inchoate right to contribution from the other if it or she were timely sued by Al-Hazmi, a right that would ripen into a cause of action when it or she had to account to Al-Hazmi. And Paragraph 13–204 makes timely Waukegan's current assertion of that inchoate right against Woods.[10]

What of *Demchuk* and its distinction between conditions of liability and statutes of limitation? That concept controls the right of the initial claimant (Al-Hazmi). It prevents courts from second-guessing the legislative judgment by creating (for example) equitable defenses to limitations arguments, and it makes inoperative the general limitations tolling provisions that might otherwise affect the running of limitations (both the limitations statutes and the tolling provisions are part of the same chapter

---

7. See, e.g., Note, *Comparative Contribution: The Legislative Enactment of the Skinner Doctrine*, 14 J.Mar.L.R. 173, 192–93 (1980). That same note was cited by *Morgan* for the other point next referred to in the text.

8. Were the latter date to control, any joint tortfeasor brought into the fray after the tort limitation period had run could always escape liability on that ground. Of course that would render Paragraph 13–204 meaningless, for it could never apply.

9. Indeed that is the sensible reading of Paragraph 302(a) itself, which speaks in the present tense as soon as joint tort liability arises (emphasis added):

> [T]here *is* a right of contribution among them, *even though judgment has not been entered* against any or all of them.

10. Once the substantive issue of Waukegan's right is determined under Illinois law, Waukegan's ability to assert that right via a third-party complaint is clear, whether as a substantive matter under the Contribution Act (Paragraph 305) or as a procedural matter assured by Rule 14(a) (see *Castro v. Plochocki*, 77 C 2910, slip op. at 6, (N.D.Ill. Jan. 25, 1984)).

in the Illinois statutes). But the same concept does *not* control the rights of tortfeasors to obtain contribution. On that subject the same legislature has spoken in unambiguous terms in the Contribution Act, and it has spoken long after it created the cause of action under the Dram Shop Act. Perhaps it is anomalous that a party may be vulnerable to liability in contribution to a fellow wrongdoer far longer than to the party whom it has wronged, but that anomaly is no greater in dram shop cases than in ordinary tort cases—and most importantly it is an anomaly the Illinois General Assembly has chosen to create.

### Limitation of Liability

 There remains for decision Waukegan's argument it should be entitled to claim indemnity from Woods on a full proportionate basis, even though Paragraph 135 puts a ceiling on Woods's liability.[11] On that score Waukegan runs afoul of the principle first articulated in this opinion:

> Nothing in Paragraph 302(a) itself creates tort liability.

Waukegan cannot bootstrap itself by using the contribution vehicle to enlarge Woods's liability (a creature of statute).

In terms of the analysis of the preceding section, when Al-Hazmi's injury was sustained Woods had an outside potential liability of $15,000 to him. In *Demchuk* terms, that was a condition of the liability that had been unknown at common law but was created by the legislature. But unlike the statute of limitations question, as to which Paragraph 13–204 can fairly be regarded as a deliberate and definitive statement by the legislature as to the *time* to assert the contribution claim, this Court cannot find the specific strictures of Paragraph 135 as to the *amount* of liability have been overridden—impliedly amended—by the Contribution Act (Paragraph 303):

> The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability.

**11.** That question was not decided in *Morgan*.

Consequently Waukegan's claim over against Woods must be limited to the lesser of two amounts:

1. $15,000 and
2. Woods's pro rata share based on culpability, determined in accordance with Paragraph 303.

When Waukegan amends its Third-Party Complaint, its prayer for relief should be modified accordingly.

### Conclusion

Woods's motion to dismiss Waukegan's Third-Party Complaint is denied. Waukegan is given leave to amend that pleading on or before February 17, 1984. Woods is then ordered to file her answer on or before March 2, 1984.