(No. 59670 █)

JOYCE M. RAKOWSKI *et al.* v. JAMES LUCENTE *et al.* (James Lucente, Appellant; Leo R. Rakowski, Appellee).

*Opinion filed November 30, 1984.*

318

RYAN, C.J., and UNDERWOOD, J., dissenting.

Robert Marc Chemers, of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Susan F. Zwick and Victor J. Piekarski, of Querrey,

Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

Leo Rakowski and his two passengers were involved in an accident with another automobile driven by James Lucente. Two weeks later Lucente executed and delivered a general release in favor of Rakowski. The next day Rakowski and the two passengers sued Lucente in the circuit court of Cook County for personal injuries they suffered in the accident.

Lucente then counterclaimed against Rakowski, seeking contribution for the injuries sustained by the passengers. Rakowski, contending that the general release barred the counterclaim for contribution as well as all other claims Lucente had against Rakowski, moved to dismiss the counterclaim. In opposition to that motion, Lucente filed an affidavit stating that he did not intend to give up his right to seek contribution from Rakowski, but intended only to release Rakowski from claims for injuries Lucente had suffered and damage to the automobile he was driving.

The circuit court dismissed Lucente's counterclaim and the appellate court affirmed (120 Ill. App. 3d 715). We allowed Lucente's petition for leave to appeal (87 Ill. 2d R. 315).

The material portions of the general release provided:

"For the sole consideration of Two Thousand two hundred ninety seven Dollars, *** the undersigned hereby releases and forever discharges Leo Rakowski, his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, *from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever,* and particularly on account of all injuries, known

and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 7th day of Sept., 1981 at or near Grand and Mannheim, Franklin Park.

*** 

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and *for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.*" (Emphasis added.)

The question raised here is whether this release executed before any claim was asserted against Lucente released his right to contribution from Rakowski.

Lucente's position is that a release does not cover claims not yet in existence unless they are specifically mentioned. Because the release was executed before a claim was asserted by the passengers, any suit was filed by them, or any payment made to them, Rakowski was not liable for any contribution at the time of its execution. Consequently, he argues, the release did not cover any claims for contribution because no such claims had yet accrued.

Some jurisdictions support the position Lucente advances based on the theory that a release operates only on present rights and does not include rights which were not in existence at the time of the release unless they are specifically enumerated. Those jurisdictions regard contribution with respect to a claim not yet asserted at the time the release is executed as a right not in existence. See, *e.g., Leitner v. Hawkins* (1949), 311 Ky. 300, 223 S.W.2d 988, *Restifo v. McDonald* (1967), 426 Pa. 5, 230 A.2d 199, and *Markey v. Skog* (1974), 129 N.J. Super. 192, 322 A.2d 513.

The contrary view is that a release may include, without express reference thereto, a right of contribution for a claim not yet asserted because the right of contribution arises at the time of the concurrent negligent acts of the joint tortfeasors. The right of contribution exists in contingent or inchoate form until payment is made, and then the right accrues and ripens into a cause of action. Because the right of contribution exists from the time the negligent acts are committed, holding that they are within the contemplation of a broadly worded release does not do violence to the general rule that a release does not include rights not in existence unless they are specifically identified. See, *e.g.*, *Minneapolis, St. Paul & Sault Sainte Marie R.R. Co. v. City of Fond du Lac* (7th Cir. 1961), 297 F.2d 583, 585 (applying the contribution law of Wisconsin and holding that right of contribution between joint tortfeasors arises at the time of the concurrent negligent acts); *Brown v. Eakin* (Del. Super. 1957), 50 Del. 574, 578, 137 A.2d 385, 387 (releasor barred from asserting claims for contribution even though they had not ripened at time release was signed); *Norton v. Benjamin* (Me. 1966), 220 A.2d 248, 253 (before a third-party complaint had been asserted, the right to contribution was inchoate and releasable); *Al-Hazmi v. City of Waukegan* (N.D. Ill. 1984), 579 F. Supp. 1441 (in Illinois the right of contribution arises at the time of the injury and exists, in inchoate form, before payment is made).

As the United States district court pointed out in *Al-Hazmi*, Illinois has adopted the position that the right of contribution exists, although in inchoate form, from the time the person seeking recovery is injured.

Nothing in the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*), as it has been applied by this court, lends support to Lucente's contentions. The statute provides that payment

is not a condition precedent to a right of contribution.

> "Enforcement. A cause of action for contribution among joint tortfeasors may be asserted by a separate action *before or after payment,* by counterclaim or by third-party complaint in a pending action." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 70, par. 305.)

Section 2(a) of the Contribution Act is also inconsistent with the theory that a right of contribution does not arise until the filing of an action or the assertion of a claim for which contribution may be sought.

> "Right of Contribution.
>
> (a) Except as otherwise provided in this Act, *where 2 or more persons are subject to liability in tort* arising out of the same injury to person or property, or the same wrongful death, *there is a right of contribution among them,* even though judgment has not been entered against any or all of them." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 70, par. 302.

In *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10-11, we construed the words "where 2 or more persons are subject to liability in tort" as used in section 2(a). We relied on *Stephens v. McBride* (1983), 97 Ill. 2d 515, 520, and said: " 'liability' is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought." (101 Ill. 2d 1, 11.) *Doyle v. Rhodes* establishes that in Illinois the right of contribution exists when the concurrent acts of the tortfeasors (in this case Rakowski and Lucente) give rise to a cause of action against them. In addition, the use of the word "is" in the phrase "there *is* a right of contribution among them" (emphasis added) in section 2(a) indicates that the right of contribution arises at the same time as the joint tortfeasors become subject to liability. Thus, Lucente's argument that a right of contribution did not arise until after the release was signed is not supported by Illinois law.

Next we look to the release itself to determine whether contribution by Rakowski was within its scope. The release is comprehensive, precise and unambiguous. Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids. As this court said in *Saddler v. National Bank* (1949), 403 Ill. 218, 228, ''What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself. [Citation.]''

The release stated that the terms of the settlement were ''completely read,'' ''fully understood,'' and ''voluntarily accepted'' by Lucente as a ''full and final compromise adjustment *** of any and all claims *** and for the *express purpose of precluding forever any further or additional claims ***.*'' (Emphasis added.) The claims to be released are described in comprehensive language as ''any and all claims, demands, damages, actions, causes of action or suits of any kind or nature ***, and particularly on account of all injuries, known and unknown, *** which have resulted or may in the future develop from an accident which occurred.'' There is no basis for Lucente's argument that the release did not include a specific type of action, that is, his right against Rakowski for contribution, because that action was not expressly enumerated. When employing a release as broad as the one used here, any attempt to list the specific types of action included in the release might have detracted from its broad and general scope.

Lucente knew when he executed the release that Ra-

kowski's conduct may have contributed to the accident. Were that not the case there would have been no point in Rakowski seeking and paying for the general release Lucente executed in his favor. Nothing in either the release or the record supports Lucente's contention that neither party intended to extinguish contribution rights. His affidavit contains only his unsubstantiated assertion that he did not intend to include his right to seek contribution in the matters released. A unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release. To accomplish that, a mutual mistake, material to the transaction and affecting its substance, must clearly and convincingly be established. *Hoops v. Fitzgerald* (1903), 204 Ill. 325, 331; *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622.

Releases similar in content to the one presented here were construed in *McNair v. Goodwin* (1964), 262 N.C. 1, 136 S.E.2d 218, *Norton v. Benjamin* (Me. 1966), 220 A.2d 248, and *Brown v. Eakin* (Del. Super., 1957), 50 Del. 574, 137 A.2d 385, to include claims the releasor might have for contribution from the releasee. In *McNair* the court concluded that the cause of action for contribution was embraced within the language of the release covering "any and all *** causes of action *** *whatsoever*" (*McNair v. Goodwin* (1964), 262 N.C. 1, 7, 136 S.E.2d 218, 223), language also found in Lucente's release. In *Norton,* the Maine court, after relying upon the construction applied in *McNair* to a release in similar form, said: "We think it no more than fair and reasonable to require that one who purports to release *all* claims should clearly specify any that he intends and desires to reserve." (*Norton v. Benjamin* (Me. 1966), 220 A.2d 248, 253.) In *Brown,* after noting that the release covering "all claims of every nature and kind whatsoever" was broad enough to release rights of contribution, the court added that "[t]here is nothing about the right to contribution which

would make it immune from waiver \*\*\*." (*Brown v. Eakin* (Del. Super., 1957), 50 Del. 574, 578, 137 A.2d 385, 387.) The reference to future actions in Lucente's release is at least as explicit and detailed as the language contained in the releases in those cases.

Lucente's reliance on *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, is misplaced. Although in that decision we held, relying on section 2(c) of the Contribution Act, that a release does not cover a joint tortfeasor not specifically identified, that case does not hold that all claims being released must be individually and specifically described. Neither does it hold that a right to contribution must be so described to be released.

As a matter of public policy the settlement of claims should be encouraged. If we were now to add limitations not expressed in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement. What tortfeasor could be expected to settle with another tortfeasor when he does not know whether he remains open to claims for contribution in uncertain amounts from one with whom he has settled? Holding the parties to the language of their release has the advantage of providing certainty and thereby encouraging settlement.

For the reasons stated above, we conclude that the release executed by Lucente extended to claims for contribution, and therefore the circuit court correctly dismissed Lucente's counterclaim for contribution. The judgment of the appellate court is therefore affirmed.

*Judgment affirmed.*

CHIEF JUSTICE RYAN, dissenting:

In my opinion, the holding in this case as to the effect of a general release cannot be squared with the ma-

jority opinion in *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196. In fact, the explanation of the majority in this case as to why the general release released all claims tracks closely the rationale of my dissent in *Alsup*. The arguments put forth in the opinion in this case, in support of the holding that a general release releases all claims, apply equally well to the argument that a general release should also release all tortfeasors.

If *Alsup* is the law of this State (and, unfortunately, it is), then for the sake of consistency, the general release in this case should be construed as not releasing the right of contribution. Section 2 of the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 302) does not justify the distinction. I therefore dissent.

JUSTICE UNDERWOOD joins in this dissent.