ROBERT P. WHITE, Plaintiff, v. TOUCHE ROSS & COMPANY *et al.*, Defendants (Touche Ross & Company *et al.*, Third–Party Plaintiffs-Appellants; Nancy S. White, Third–Party Defendant-Appellee).

First District (2nd Division)   No. 86—3251

Opinion filed October 27, 1987.—Rehearing denied December 15, 1987.

John W. Rotunno and Stephen J. O'Neil, both of Bell, Boyd & Lloyd, of Chicago, for appellants.

Robert E. Arroyo and Jill E. Evans, both of Keck, Mahin & Cate, of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The plaintiff Robert White brought this action against defendant accountants Touche Ross & Company and William Schwanbeck (hereinafter Touche Ross), and defendant attorneys Allen Gerrard, Michael Gerrard, and Gerrard and Gerrard (hereinafter Gerrard), for alleged

negligence in connection with the negotiation of a property settlement agreement entered into by the plaintiff and his ex-wife Nancy White. Touche Ross brought a third-party action against Nancy White for contribution, indemnity and equitable apportionment, alleging fraud in the inducement of the agreement. The circuit court entered an order dismissing the third-party complaint and certifying the order for immediate appeal pursuant to Supreme Court Rule 304. (107 Ill. 2d R. 304.) Robert White and Gerrard are not parties to the action before this court. Nancy White did not appeal the circuit court's dismissal of the equitable apportionment count.

In his complaint, Robert White alleges that he hired Gerrard and the certified public accounting firm of Touche Ross, including its former partner William Schwanbeck, to render legal and accounting services, respectively, to him in connection with the White's divorce action. Mr. White contends that the defendants reviewed the memorandum of agreement (hereinafter agreement), which was signed after protracted negotiations, and allegedly advised him that he would be able to deduct for tax purposes all of the alimony payments provided for in paragraph 5 of that agreement.

In Mrs. White's initial settlement proposal she sought the marital home and a $150,000 payment from Mr. White upon the entry of a judgment of divorce. She also requested support payments totalling $960,000, payable at the rate of "$4000.00 per month for 240 months, defeasible upon the death of the wife or the making of 240 such monthly payments, whichever shall first occur," with a reduction to $2,000 per month if Mrs. White remarried.

Following further negotiations, Nancy White made a second proposal in which she asked for a payment of a total of $175,000 "in consideration of her waiver, remission and relinquishment of any and all claims" which she might have to property of Mr. White, $75,000 payable upon the entry of a judgment of divorce and $100,000 upon the sale of the marital home or August 1, 1969, whichever occurred first. Mrs. White also sought payments totalling $540,000 "as alimony in gross *** in equal monthly installments of Two Thousand Two Hundred Fifty Dollars ($2,250) each," until the earlier of the death of Mrs. White or the making of 240 payments, subject to a reduction if she remarried. Mr. White objected that the property settlement proposed by Mrs. White did not effect an equal division of property; accordingly, the maximum amount he would pay in settlement of his wife's property interests was $100,000. Thus, negotiations reached an impasse.

Mr. White thereupon retained Touche Ross for the purpose of re-

viewing and commenting upon Mrs. White's second proposal. Touche Ross concluded that due to a marked difference in their tax brackets, *both* parties could retain greater after-tax income if the proposal were restructured to provide for a property settlement of $100,000 and deductible alimony payments to Mrs. White *greater* than those that she had demanded in her second draft. The Internal Revenue Code provides that periodic payments made pursuant to a decree of divorce or of separate maintenance are income to the recipient (I.R.C. sec. 71(a) (1982)), and deductible by the payor. I.R.C. sec. 215 (1982).

On February 14, 1969, the parties' attorneys and Touche Ross met to discuss restructuring the second proposal to take advantage of the difference in the parties' tax brackets. At the meetings, Mr. White's representatives proposed: (a) a lump-sum property settlement of $100,000; and (b) a $180,000 *increase* in the amount of the alimony payments previously requested by Mrs. White, bringing the total alimony payments to $720,000, payable at the rate of $57,000 per year for the first six years and $27,000 per year for the remaining 14 years. Mr. White thus offered Mrs. White $180,000 in taxable payments in exchange for $75,000 in nontaxable payments. Mrs. White's attorney agreed to study the proposal further.

Touche Ross then prepared an "Analysis of Net Available Funds" in which it computed the after-tax funds that Mr. and Mrs. White each would have available during the 10-year period beginning in 1969, assuming that Mr. White made payments of deductible alimony in the amount of $57,000 per year during the first six years and $27,000 per year thereafter. A critical assumption underlying the analysis was Touche Ross' belief that Mrs. White would include in her taxable income the full amount of all support payments made by Mr. White.

Mrs. White approved the proposal discussed at the February 14 meeting and her attorney prepared a revised agreement, wherein the proposed payments were of the amounts and timed in accordance with the "Analysis of Net Available Funds." In paragraph 6 of the agreement, the parties stipulated that all the payments under paragraph 5 would be deemed "made by the husband to the wife in discharge of a legal obligation to support and maintain the wife, and to be made in connection with an agreement incident to a judgment for divorce within the meaning and purview of Sections 71 and 215 of the United States Internal Revenue Code of 1954, as amended." The agreement then stated that the alimony payments under paragraph 5 "shall be includible in the gross income of the wife, and deductible from the gross income of the husband, to the full extent permissible

under such law or laws."

At the time that Mrs. White executed the agreement, her attorney admonished her that she would have a substantial tax liability on the alimony payments of approximately $60,000 per year (the total amount of the subparagraph 5(a) and 5(b) payments) which she would receive during the first six years, and that she would have to make provision for payment of those taxes. Mr. White's attorney recommended that she retain a tax accountant and reserve a substantial amount of money because she would owe an additional $29,000 to $30,000 in taxes for each of the first six years that she received alimony. Nancy White stated that she would do so, and at no time during the negotiations did she indicate that she did not intend to include in her income the alimony payments received pursuant to subparagraph 5(a).

In 1975, the IRS asserted a deficiency against Mrs. White for her failure to include as income payments received pursuant to subparagraph 5(a), and also one against Mr. White for deducting those payments. Both parties contested the deficiencies in the Tax Court. The Tax Court ruled in favor of Mr. White and against Mrs. White in *White v. Commissioner* (1984), 82 T.C. 222, holding that the full amount of the payments were deductible by Mr. White and includible in the income of Mrs. White. The Tax Court found that both the terms of the agreement and the course of the negotiations between the parties supported the conclusion that the parties intended the payments to be integrated and accounted for as income to Nancy White.

The Seventh Circuit subsequently reversed the Tax Court, reasoning that under the Internal Revenue Code the subparagraph 5(a) and 5(b) payments could not be merged for purposes of determining whether the payments were periodic. (*White v. Commissioner of Internal Revenue* (7th Cir. 1985), 770 F.2d 685.) In reaching its decision, the court noted the support in the record for the findings of the Tax Court as to the intent of the parties, and commented that "paragraph 6 and the negotiations leading up to the memorandum agreement seem clearly to suggest that the parties intended for Nancy to pay the taxes on all of the payments made under paragraph 5, not just those under subparagraph 5(b)." (770 F.2d 685, 689.) The court concluded that although it might agree with Mr. White's position, the intent of the parties as to the allocation of the tax burden resulting from the agreement was not controlling for purposes of the Internal Revenue Code. 770 F.2d 685, 689-90.

OPINION

I

■ Touche Ross contends that the Illinois Contribution Among Joint Tortfeasors Act (Contribution Act or Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) applies to the case at bar because the cause of action did not arise until 1985, while Nancy White argues that the conduct which caused the alleged tort occurred before the adoption of the Act and, thus, this case should be decided according to the law of indemnity. We agree with both the circuit court and Nancy White that this case is not cognizable under the Contribution Act.

The Act was adopted by our legislature to codify the decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, wherein our supreme court adopted the doctrine of contribution among joint tortfeasors. (*Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 575, 434 N.E.2d 482; *Verson All-steel Press Co. v. Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419, 434 N.E.2d 456.) In *Skinner*, the court held that its decision applied only "to causes of action arising out of occurrences on and after March 1, 1978" (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 17, 374 N.E.2d 437), but the Act omitted the "out of occurrences" language.

Our courts have confronted this issue previously, most notably in *Verson*, wherein the court rejected the plaintiff's argument "that a cause of action for contribution 'arises' when a judgment or settlement is paid." (*Verson Allsteel Press Co. v. Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419, 421, 434 N.E.2d 456.) In *Verson*, the subject payment was in 1980, thus the plaintiff contended that the Contribution Act was applicable. But the court described the illogical consequences which would result if it accepted the plaintiff's argument:

> "If we were to adopt the construction of section 301 urged by Verson, the effective date of March 1, 1978, would become wholly arbitrary. If the cause of action for contribution 'arises' when a judgment is paid, the statute's compass is far broader than *Skinner's* and the fact that the statute and the decision designate the same effective date—March 1, 1978—would be meaningless. Given the statute's unquestionable kinship with the *Skinner* decision and given the legislature's expressed intent to follow the case, we hold that the statute applies to causes of action for contribution arising out of torts committed

on and after March 1, 1978." (105 Ill. App. 3d 419, 422, 434 N.E.2d 456.)

Similarly, Touche Ross' construction of the statute would make the "cut-off" date of March 1, 1978, illusory. A myriad of actions in which the underlying incident occurred prior to that date consequently would be cognizable under the Contribution Act, but to do so would contravene the clear intent of the legislature by in essence making *Skinner* retroactive, rather than prospective, in its application. Moreover, it is illogical to claim that Mr. White was injured in 1975 when the IRS issued the deficiency notice, subsequently uninjured when the Tax Court ruled, and reinjured in 1985 when the Seventh Circuit decided the case; yet this absurd result would obtain if this court were to follow Touche Ross' argument to its extreme conclusion.

Other courts have also interpreted the Contribution Act as requiring an occurrence or injury prior to March 1, 1978. (See *Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 575, 434 N.E.2d 572, 575; *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284.) In *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359, the patient was negligently treated and suffered physical damages in 1972. The court held that "[t]he occurrence in this case was the improper diagnosis and treatment in 1972," not the injury itself. (100 Ill. App. 3d 1, 13, 425 N.E.2d 1359.) In *Balmes, Johnson,* and *Ali* the words "injury" and "incident" are used interchangeably because the injury and the incident occurred at approximately the same time and well before March 1, 1978.

Touche Ross misapprehends *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867, and *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 501 N.E.2d 376. The court in *Van Slambrouck* held that the Contribution Act was inapplicable because the relevant event, *i.e.,* the incident which caused the injury, occurred in 1973 (105 Ill. 2d 462, 469, 475 N.E.2d 867), while in *Malawy* both the incident and the injury occurred in 1977. It is therefore incorrect to conclude that these two cases stand for the proposition that the relevant question is when the cause of action accrues.

Touche Ross' approach would be proper if this court were seeking to determine when the cause of action matured for the purpose of the statute of limitations, but that is obviously not the issue in this case. As we noted in *Verson,* "the statute of limitations appropriately runs from the time when the cause of action ripens but the naked right of contribution arises at an earlier time," (*Verson Allsteel Press Co. v.*

*Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419, 423, 434 N.E.2d 456; see also *Al-Hazmi v. City of Waukegan* (N.D. Ill. 1984), 579 F. Supp. 1441, 1445.) Since the Federal case cited by Touche Ross, *viz, Bonanno v. Potthoff* (N.D. Ill. 1981), 527 F. Supp. 561, concerns a statute of limitations question, it is inapposite to the case *sub judice.*

■ Our supreme court discussed the issue of when a right of contribution arises in a case which involved a general release from liability. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) In *Rakowski* the court held that "Illinois has adopted the position that the right of contribution exists, although in inchoate form, from the time the person seeking recovery is injured." (104 Ill. 2d 317, 321, 472 N.E.2d 791; see also *Al-Hazmi v. City of Waukegan* (N.D. Ill. 1984), 579 F. Supp. 1441.) By analogizing *Rakowski* to the case at bar, we may logically conclude that the relevant date for determining whether the Contribution Act applies is the date of injury.

■ ■ An injury has been defined as an invasion of a person's interest, even if there is no immediate harm or that harm is speculative. (Restatement (Second) of Torts sec. 7, comment *a*, at 13 (1965); Black's Law Dictionary 706 (5th ed. 1979); accord *Gillman v. Chicago Rys. Co.* (1915), 268 Ill. 305, 309, 109 N.E. 181.) Based on this definition, one court has held that because survivors of a plane crash had to undergo physical examinations in order to verify that they had not been physically harmed, the examinations themselves constituted an injury. (*Friends for All Children, Inc. v. Lockheed Aircraft Corp.* (D.C. Cir. (1984), 746 F.2d 816, 826.) Accordingly, we hold that Mr. White was injured in 1975 when the IRS issued its deficiency. Certainly it was at that time that Mr. White suffered an injury: he was faced with either having to contest the IRS' action, which requires the expenditure of both time and money, or he could have chosen not to contest the deficiency and proceed to pay the requested amount. In either case, the Contribution Act would not apply to the case at bar.

## II

■ The circuit court held herein that the complaint did not state a valid cause of action for implied indemnity. Our supreme court has declared that to state such a cause of action the complaint "must allege: (1) a pretort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant." (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469, 475 N.E.2d 867.) Despite Touche Ross' protestations to the contrary,

this test is not in the disjunctive; both elements must be present in order to have a valid claim for implied indemnity.

The *Van Slambrouck* court explained the first prong of the test for a valid cause of action for implied indemnity as follows:

> "Classic pretort relationships which have given rise to a duty to indemnify include: lessor and lessee [citation]; employer and employee [citation]; owner and his lessee [citation]; master and servant [citation]. In *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, and *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, indemnity was permitted even though there was no pretort relationship alleged and/or proved between the third-party plaintiff and the third-party defendant. However, in *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 231-32, this court stated, '[A] third-party complaint must disclose some relationship upon which a duty to indemnify may be predicated.' " (105 Ill. 2d 462, 469-70, 475 N.E.2d 867.)

In the instant case, however, there was no pretort relationship between Touche Ross and Nancy White. Nancy White did not retain the services of Touche Ross; rather, the company was providing professional services for the opposite party in the settlement negotiations, Robert White, a relationship no more substantial than that of the parties in *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 497 N.E.2d 143, wherein the court held that "[t]he status of business invitee is not a relationship which gives rise to a legal duty to indemnify such as in relationships involving vicarious liability, *e.g.*, lessor-lessee, employer-employee, owner-lessee and master-servant." (146 Ill. App. 3d 457, 461, 497 N.E.2d 143.) Therefore, even construing the pleadings in the light most favorable to Touche Ross, it has not pleaded a valid claim for implied indemnity.

It should be noted that neither party raised the issue of the statute of limitations, hence it is not before this court. Accordingly, we hold that the circuit court properly dismissed Touche Ross' third-party action.

Affirmed.

STAMOS and HARTMAN, JJ., concur.