103 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James ARMSTRONG, Plaintiff-Appellant,
v.
Austin RANDOLPH, Jr.,[2] et al., Defendants-Appellees.
 No. 95-3262.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 12, 1996.[1]
Decided Dec. 04, 1996.
 
 Before MANION, ROVNER and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 James Armstrong brought the present suit under 42 U.S.C. § 1983 alleging that various officers and employees at the Vandalia and Logan Correctional Centers violated his due process, Fourth Amendment and Eighth Amendment rights. As this case proceeded to trial, Armstrong settled another lawsuit, Armstrong v. Richardson, No. 91 C 7096, initiated against different Illinois Department of Corrections personnel. The settlement agreement provided that, in return for a reduction in his security status, a conditional one year reduction in his segregation time and the possibility of an assignment as porter, Armstrong would agree "to dismiss with prejudice any and all other outstanding civil claims, lawsuits or actions, including but not limited to those in tort, any other statute (including 43 [sic] U.S.C. § 1983), rule, common law provision or in equity including but not limited to cases [listing nine cases related to Armstrong v. Richardson ]." (Settlement Agreement and Release, at 4-5 ("Release")). The last case in this list, Armstrong v. McGinnis, was struck out and initialed by the parties. (Release, at 5). The release further provided that Illinois law would govern the terms of the release, (Release, at 6), and contained an integration statement. (Release, at 5). The release was executed on April 12, 1994.
 
 
 2
 The district court judge in this case was informed of the settlement agreement and dismissed the case without prejudice and with the right to reopen the case if the settlement was not consummated. The dismissal was to become final 60 days after entry. Armstrong moved to vacate the dismissal on the grounds that this lawsuit was not subject to the settlement agreement. In support Armstrong submitted an affidavit stating that he did not intend to settle this lawsuit by entering into the Richardson release. The district court denied the motion to vacate and dismissed the case with prejudice, stating that Armstrong's affidavit could not overcome the plain language of the agreement. (Order, Jan. 3, 1995). Armstrong filed a motion to reconsider arguing that the broad language of the release should be read more narrowly so as to reflect the alleged intent of the parties. He also argued that, while the Attorney General's Office negotiated with the attorney representing him in the Richardson suit, it may have over-reached by failing to notify the attorney representing him in this lawsuit of the settlement negotiations.[3] The judge denied Armstrong's motion to reconsider, finding "that under the clear language of the settlement agreement signed by [Armstrong], the case was properly dismissed." (Order, Aug. 23, 1995).
 
 
 3
 Armstrong now appeals. Although his brief is rather confusing, we believe Armstrong is renewing the arguments previously raised in his motion to vacate the dismissal and his motion to reconsider. Armstrong also argues that the lawyer representing him in the Richardson case did not have the authority to settle this case. We affirm.
 
 
 4
 A settlement agreement is a contract. Carr v. Runyan, 89 F.3d 327, 330 (7th Cir.1996); Farm Credit Bank of St. Louis v. Whitlock, 581 N.E.2d 664, 667 (Ill.1991). The interpretation of a contract is a question of law which we review de novo. Florida East Coast Ry. Co. v. CSX Transp., Inc., 42 F.3d 1125, 1128 (7th Cir.1994), Farm Credit Bank of St. Louis, 581 N.E.2d at 667. While the parties disagree over whether Illinois law or federal law should govern the interpretation of the Richardson release, we need not resolve that question because the principles of federal and Illinois contract law are the same in all respects relevant here.
 
 
 5
 "Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parole evidence or any other extrinsic aids." Rakowski v. Lucente, 472 N.E.2d 791, 794 (Ill.1984); see also Farm Credit Bank of St. Louis, 581 N.E.2d at 667 ("The intention of the parties to the contract must be determined from the instrument itself."). A court may consider extrinsic evidence only when the instrument is ambiguous. Farm Credit Bank of St. Louis, 581 N.E.2d at 667; see also Home Ins. Co. v. Chicago and Northwestern Transp. Co., 56 F.3d 763, 768-769 (7th Cir.1995) (explaining proper analysis for determining when extrinsic evidence is admissible to supplement the interpretation of a written instrument). However, "[l]anguage in a contract is not rendered ambiguous simply because the parties do not agree upon its meaning," Reynolds v. Coleman, 527 N.E.2d 897, 903 (Ill.App.Ct.1988), and "[w]hat the parties to a written contract may have understood as to the meaning of the language used is not admissible evidence." Rakowski, 472 N.E.2d at 794 (quoting Saddler v. National Bank, 85 N.E.2d 733 (Ill.1949)). Finally, a unilateral, or self-induced, mistake is insufficient to void a clear and unambiguous release. Rakowski, 472 N.E.2d at 794; Simmons v. Blauw, 635 N.E.2d 601, 603 (Ill.App.Ct.1994).
 
 
 6
 Here, Armstrong entered into a settlement agreement that clearly and explicitly states that he agreed to "dismiss with prejudice any and all other outstanding civil claims, lawsuits or actions ... including but not limited to [a list of cases]," (Release, at 4-5) (emphasis added), that is, cases not based on the Richardson facts. This lawsuit was an "outstanding civil claim" at the time the settlement agreement was executed. By the plain language of the agreement, Armstrong agreed to dismiss it with prejudice. Armstrong argues that he did not intend the settlement agreement to apply to this case. However, intent is determined by the agreement when the agreement is explicit and clear, see Rakowski, 472 N.E.2d at 794, and subjective evidence of intent is inadmissible to explain even an ambiguous written agreement. See Home Ins. Co., 56 F.3d at 768 (interpreting Illinois law). Further, Armstrong's misunderstanding of what lawsuits the settlement agreement applied to can be no more than a unilateral mistake, which will not void a release. See Rakowski, 472 N.E.2d at 794.
 
 
 7
 Armstrong, pointing us to Gladmus v. Laughlin, 366 N.E.2d 430 (Ill.App.Ct.1977), argues that under Illinois law the intent of the parties is determined not only from the written agreement but also from the circumstances surrounding the transaction. Id. at 432. He also argues for application of the proposition that "Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." Id. However, this argument fails as well. This lawsuit was pending at the time Armstrong signed the release, it must have been "in the minds of the parties"--and therefore a circumstance surrounding the transaction--when they included the language indicating that "any and all other outstanding civil claims, lawsuits or actions" would be dismissed.
 
 
 8
 Finally, Armstrong suggests that the Attorney General's Office may have over-reached by failing to notify his attorney for this case of the Richardson settlement negotiations and that his Richardson attorney did not have the authority to settle this lawsuit.[4] Over-reaching occurs when one party to an agreement exercises unequal bargaining power over the other party such that the resulting agreement is unfair. Here, Armstrong was represented by counsel during the settlement negotiations, made several changes to the agreement demonstrating that he was able to negotiate in his own favor and was advised on how to exempt certain lawsuits from application of the release. We find it irrelevant that Armstrong's two attorneys were not aware of other Armstrong suits because it was Armstrong's responsibility to keep his attorneys informed. Finally, Armstrong's Richardson attorney did not "settle" any case; Armstrong did.
 
 
 9
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 [2]
 During the pendency of this appeal, Austin Randolph, Jr. replaced David Riegel as Assistant Warden of Operations at Vandalia Correctional Center. Pursuant to Federal Rule of Appellate Procedure 43(c), this court on its own motion substitutes Austin Randolph, Jr. as defendant in this action
 
 
 [1]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [3]
 Armstrong had separate counsel representing him in the two lawsuits. Armstrong states in his appellate brief that his Richardson attorney did not know about this case, and in his motion to reconsider that his attorney for this case did not know about the Richardson case or the settlement negotiations
 
 
 [4]
 Armstrong cites no cases for either proposition, but does quote Illinois Rule of Professional Conduct 4.2, which provides "During the course of representing a client, a lawyer shall not communicate ... on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter."